Jasen, J.
 

 This appeal requires us to pass upon a question of public importance concerning right-of-way privileges granted by statute to ambulances being driven as emergency vehicles.
 

 An ambulance owned by the defendant, Hospital Ambulance Service, Inc., answering an emergency call
 
 [1]
 
 , collided with another vehicle at the traffic-controlled intersection of '7th Avenue and 3rd Street in. Brooklyn. At the time of the accident, the red turret light of the ambulance was on, but no siren was sounded.
 

 The jury was instructed that the defendant’s failure to use or equip its ambulance with a siren or other device to give
 
 *297
 
 audible emergency warning deprived the ambulance driver of a preferred right of way at the traffic-controlled intersection at the time of the accident, and required the ambulance driver to observe traffic light commands the same as any other motor vehicle operator. Thus, the issue dispositive of the litigation was the jury’s determination as to which of the vehicles entered the intersection against a red traffic signal. The question was resolved by the jury in favor of the plaintiffs and against the ambulance service.
 

 We granted leave to appeal in this case in order to consider the issue whether an ambulance, on an emergency call, is required at a traffic-controlled intersection to sound an audible emergency signal in order to be entitled to the privileges of an emergency vehicle.
 

 Section 1104 of the Vehicle and Traffic Law sets forth the privileges accorded emergency vehicles when responding to an emergency call.
 
 [2]
 
 Particularly pertinent is subdivision (c) of the section which provides that the 11 exemptions herein granted to an authorized emergency vehicle shall apply only when audible signals are sounded from any said vehicle while in motion by bell, siren, or exhaust whistle
 
 as may be reasonably necessary,
 
 and when the vehicle is equipped with at least one lighted lamp displaying a red light ”. (Emphasis added.)
 

 Construction of the phrase “ as may be reasonably necessary ” is the pivotal point in controversy. The ambulance service argues that the phrase negatives an absolute requirement that an audible emergency signal be given, and merely presents a jury question to determine such reasonable necessity. In other words, it contends that “ § 1104 requires the ambulance driver to make a judgment as to whether or not it is ‘ reasonably necessary ’ to sound a siren and that a jury will determine whether his judgment was correct, if he does not sound a siren and an accident occurs.”
 

 
 *298
 
 In construing statutory provisions, the purpose of the statute and the objectives sought to be accomplished by the Legislature must be borne in mind.
 
 (Matter of Capone
 
 v.
 
 Weaver,
 
 6 N Y 2d 307, 309;
 
 Matter of New York Post Corp.
 
 v.
 
 Leibowits, 2 NY 2d 677, 685; People
 
 v.
 
 Ryan,
 
 274
 
 N.
 
 Y. 149, 152; see, also, 2 Sutherland, Statutory Construction [3d ed.], § 4501.) Indeed, the ‘ ‘ primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature.”
 
 (Rankin
 
 v.
 
 Shanker,
 
 23 N Y 2d 111, 114.) Whenever such intent is apparent, from the entire statute, its legislative history, or the statutes of which it is made a part, it must be followed in construing the statute.
 
 (Matter of United Press Assns.
 
 v.
 
 Valente,
 
 308
 
 N.
 
 Y. 71, 83-84;
 
 Matter of River Brand Rice Mills
 
 v.
 
 Latrobe Brewing Co.,
 
 305 N. Y. 36, 43; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 111, p. 225.) While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect to its plain meaning
 
 (Meltser
 
 v.
 
 Koenigsberg,
 
 302 N. Y. 523, 525;
 
 Lawrence Constr. Corp.
 
 v.
 
 State of New York,
 
 293
 
 N.
 
 Y. 634, 639), the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be adhered to.
 
 (Matter of Hogan
 
 v.
 
 Culkin,
 
 18 N Y 2d 330, 335 and cases cited therein.)
 
 [3]
 
 Bather, “ [t]o effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning and operation, and language general in expression may be subjected to exceptions through implication.”
 
 (Matter of Meyer,
 
 209 N. Y. 386, 389-390; see
 
 Surace
 
 v.
 
 Banna,
 
 248 1ST. Y. 18, 21;
 
 People
 
 v.
 
 Santoro,
 
 229 N. Y. 277, 281-282; cf.
 
 Matter of Smith [Great Amer. Ins. Co.],
 
 29 N Y 2d 116, 120.)
 

 The predecessor statute to section 1104, section 84 of the Vehicle and Traffic Law, likewise authorized emergency vehicles to pass through red signal-controlled intersections. Such a privilege was granted, however, only when “ adequate warning
 
 *299
 
 [was] sounded.” »(L. 1947, ch. 137, § 2.) Thus, the sounding of an audible emergency warning was made a strict prerequisite. It is highly significant that when the statute was recodified, the joint legislative committee, which proposed section 1104, did not intend any change in this warning requirement. (See N. Y. Legis. Doc., 1954, No. 36, p. 36.) In its report on proposed section 1144 of the Vehicle and Traffic Law, which imposes a duty upon other motorists
 
 to yield the right of way
 
 upon the approach of an emergency vehicle sounding an audible signal by siren, exhaust whistle, or bell, the committee re-emphasized the mandatory requirement that a siren be sounded in order to invoke the privilege. (N. Y. Legis. Doc., 1954, No. 36, p. 75.)
 

 In light of this legislative history, and considering the contrary indications found in the committee’s notes, it is inconceivable, we suggest, that the Legislature intended to have the jury determine whether there was a need to sound an alarm to take advantage of the privilege of proceeding against a red traffic signal light. (Cf.
 
 Williams
 
 v.
 
 Williams,
 
 23 N Y 2d 592, 598-599.) As the committee’s report makes clear, indeed, in view of its recognition of the unreasonable risk imposed on other motorists should an audible warning not be given, the interpolation of the phrase “ as may be reasonably necessary ”, which was not contained in either section 84 or section 11-106 of the Uniform Vehicle Code
 
 [4]
 
 , was not intended to alter the prior rule that the sounding of an emergency warning is indispensable for the attaching of the privilege to proceed against a red signal light. In other words, when proceeding against a red traffic signal, caution requires and the statute was hardly intended to say otherwise, that audible warnings be sounded — loud enough to be heard and given soon enough to be acted upon—so as to avoid a collision.
 

 It should be readily apparent that motorists facing a green light are invited to proceed through the intersection and, in so doing, may not appreciate or have knowledge of the approaching danger unless they have audible warning. The conclusion, therefore, is clear that the phrase,
 
 “
 
 as may be reasonably necessary ’ ’, was primarily directed at other traffic regulation immunities — such as speed limitations, parking restrictions,
 
 *300
 
 directional and turning regulations — and not at the immunity from observing red signal lights. This construction is manifestly reasonable since the perceivable risk in the enjoyment of this particular immunity suggests the use of greater caution and standards than are applicable to the other immunities. (Cf.
 
 Buck
 
 v.
 
 Ice Delivery Co.,
 
 146 Ore. 132,134-135.)
 

 In so construing section 1104 (subd. [c]), we also give heed to the principle of statutory construction that a court must take the ‘ ‘ entire act into consideration ’ ’
 
 (People ex rel. Miller
 
 v.
 
 Martin,
 
 1 N Y 2d 406, 410), and “ aim to reconcile apparent contradictions ”
 
 (Hoey
 
 v.
 
 Gilroy,
 
 129 N. Y. 132, 137; see, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 97, 98). Thus, by imposing an absolute requirement that an audible warning be given before the emergency vehicle exemption attaches, the apparent inconsistency between sections 1104 and 1144 is reconciled. (Accord,
 
 Hogle
 
 v.
 
 City of Minneapolis,
 
 193 Minn. 326; but see
 
 Reed
 
 v.
 
 Simpson,
 
 32 Cal. 2d 444; see, generally, Ann., Ambulance — Injury—Liability, 84 ALB 2d 121, esp. Part III, Accidents at street intersections; Fisher, Vehicle Traffic Law, pp. 147-163, 260-262.)
 

 In sum, the ambulance was not entitled to emergency status since its operator did not, as required by statute, give an audible warning as it approached and entered the intersection against a red signal.
 

 Accordingly, the order appealed from should be affirmed.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Gibson concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Plaintiff Abood had been struck by a hit-and-run vehicle, and seriously injured. Accompanying him in the ambulance were plaintiffs, Theodore Anderson, Irene Smith and Gerald Pleau.
 

 [2]
 

 . The privileges are enumerated in subdivision (b) of section 1104. Pursuant to this subdivision, the driver may: “1. Stop, stand or park irrespective of the provisions of this title; 2. Proceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may he [reasonably] necessary for safe operation; 3. Exceed the maximum speed limits so long as he does not endanger life or property; 4. Disregard regulations governing directions of movement or turning in specified directions.”
 

 [3]
 

 .
 
 “
 
 There is no more likely way to misapprehend the meaning of language —
 
 be it in a constitution, a
 
 statute, a will or a contract — ”, Judge Learned Hand reminded us,
 
 “
 
 than to read the words literally, forgetting the object which the document as á whole is meant to secure.”
 
 (Central Hanover Bank & Trust Co.
 
 v.
 
 Commissioner of Internal Revenue,
 
 159 F. 2d 167, 169; see, also,
 
 Spencer
 
 v.
 
 Childs,
 
 1 N Y 2d 103, 106-107.)
 

 [4]
 

 . Section 1104 was derived substantially from this section of the Uniform Vehicle Code. (N. Y. Legis. Doc., 1954, No. 36, p. 36.)