*506 OPINION OF THE COURT
Bertram R Gelfand, S.
This is an application for the adoption of a male child born out of wedlock on May 18, 1977. The infant was surrendered for adoption to an authorized agency by his mother. The agency is aware of the identity of the alleged putative father. Application has been made by the agency and petitioners that petitioners be permitted to complete jurisdiction in compliance with section 111-a of the Domestic Relations Law without being required to disclose their identity to the alleged putative father. This request places at issue the meaning and import of subdivision 4 of section 111-a of the Domestic Relations Law.
The pertinent portions of subdivision 4 of section 111-a of the Domestic Relations Law result from a relatively recent amendment which mandates that notice of an adoption proceeding must be given to a putative father (L 1977, ch 862, §§ 7-9). The new subdivision 4 of the section outlines the form of this notice and the permissible procedure for completing service where personal service is not possible. This subdivision reads as follows: "4. Notice under this section shall be given at least twenty days prior to the proceeding by delivery of a copy of the petition and notice to the person. Upon a showing to the court, by affidavit or otherwise, on or before the date of the proceeding or within such further time as the court may allow, that personal service cannot be effected at the person’s last known address with reasonable effort, notice may be given, without prior court order therefor, at least twenty days prior to the proceeding by registered or certified mail directed to the person’s last known address or, where the person has filed a notice of intent to claim paternity pursuant to section three hundred seventy-two-c of the social services law, to the address last entered therein. Notice by publication shall not be required to be given to a person entitled to notice pursuant to the provisions of this section.” (Emphasis added.)
Delivery of a copy of the petition for adoption to a putative father will necessarily, ab initio, disclose to him the identity, residence and business address of the parties seeking to adopt.
Subdivision 3 of section 111 of the Domestic Relations Law specifically provides: "Notwithstanding any other provision of law, neither the notice of a proposed adoption nor any process in such proceeding shall be required to contain the name of the person or persons seeking to adopt the child.”
*507 In furtherance of the mandate of confidentiality, subdivision 4 of section 112 of the Domestic Relations Law provides: "None of the papers in the proceeding shall state the surname of the child in the title and no petition, agreement, consent, affidavit, nor any other document which is required to be signed by the adoptive parents shall contain the surname of the adoptive child.”
The regulations governing the procedures of both the New York City and New York State Health Departments mandate that after entry of an adoption order, the original birth records of adoptees are sealed and replaced with a new birth record showing the adoptive parents’ names in place of the names of the natural parents. This precludes tracing an adoptee by following the trail of the original birth record to the one naming the adoptive parents.
The Governor’s memorandum accompanying the approval of the predecessor of subdivision 4 of section 112 of the Domestic Relations Law (L 1967, ch 740, formerly subdivision 2 of the statute) acknowledges the legislative intent as to confidentiality in adoptions in the following language: "Likewise, the identity of the child and his adoptive parents would not be made known to the natural parents. Experience has shown that * * * the child [is] best served if the adoptive and natural families are not known to each other.” (NY Legis Ann, 1967, p 292.)
Where different statutes appear to conflict with each other, the courts have a duty to determine the intent of the Legislature. A similar construction responsibility exists where the meaning or intent of a statute, when read in relation to the total body of law on the subject, is not clear. (New York State Bankers Assn. v Albright, 38 NY2d 430, 437; Le Drugstore Etats Unis v New York State Bd. of Pharmacy, 33 NY2d 298, 302; Abood v Hospital Ambulance Serv., 30 NY2d 295, 298, 300; Matter of Astman v Kelly, 2 NY2d 567, 572; Matter of River Brand Rice Mills v Latrobe Brewing Co., 305 NY 36, 43; McKinney’s Cons Laws of NY, Book 1, Statutes, § 111.) The scope of this judicial responsibility, when presented with an apparent contradiction between various sections of the law, was summarized by Judge Jasen, writing for a unanimous Court of Appeals in Abood v Hospital Ambulance Serv. (supra, pp 298, 300), as follows:
"In construing statutory provisions, the purpose of the statute and the objectives sought to be accomplished by the *508 Legislature must be borne in mind. (Matter of Capone v. Weaver, 6 N Y 2d 307, 309; Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677, 685; People v. Ryan, 274 N. Y. 149, 152; see, also, 2 Sutherland, Statutory Construction [3d ed.], § 4501.) Indeed, the 'primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature.’ (Rankin v. Shanker, 23 N Y 2d 111, 114.) Whenever such intent is apparent, from the entire statute, its legislative history, or the statutes of which it is made a part, it must be followed in construing the statute. (Matter of United Press Assns. v. Valente, 308 N. Y. 71, 83-84; Matter of River Brand Rice Mills v. Latrobe Brewing Co., 305 N. Y. 36, 43; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 111, p. 225.) While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect to its plain meaning (Meltzer v. Koenigsberg, 302 N. Y. 523, 525; Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 639), the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be adhered to. (Matter of Hogan v. Culkin, 18 N Y 2d 330, 335 and cases cited therein.) Rather, '[t]o effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning and operation, and language general in expression may be subjected to exceptions through implication.’ (Matter of Meyer, 209 N. Y. 386, 389-390; see Surace v. Danna, 248 N. Y. 18, 21; People v. Santoro, 229 N. Y. 277, 281-282; cf. Matter of Smith [Great Amer. Ins. Co.], 29 N Y 2d 116, 120.) * * *
"In so construing section 1104 (subd. [c]), we also give heed to the principle of statutory construction that a court must take the 'entire act into consideration’ (People ex rel. Miller v. Martin, 1 N Y 2d 406, 410), and 'aim to reconcile apparent contradictions’ (Hoey v. Gilroy, 129 N. Y. 132, 137; see, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 97, 98).” It is within the framework of this judicial construction function that an examination is made upon this application as to whether the relief sought by petitioners may, as a matter of law, be granted.
On its face, the language of subdivision 4 of section 111-a of the Domestic Relations Law seems quite explicit in directing the delivery of a copy of the petition for adoption to a putative father, or alleged putative father, and thereby throw *509 ing into the public domain the details of the potential adoptive status of the infant involved in the proceeding. However, a literal reading of the words constituting this direction for the delivery of a copy of the petition in its entirety not only is in direct conflict with the provisions of subdivision 3 of section 111 of the Domestic Relations Law and subdivision 4 of section 112 of the Domestic Relations Law, but is contrary to the well-established public policy of this State mandating maximum confidentiality in adoption proceedings (NY Legis Ann, 1967, p 292, Governor’s memorandum on approving L 1967, ch 740; People ex rel. Scarpetta v Spence-Chapin Adoption Serv., 28 NY2d 185, 195; Matter of Linda, F. M., 95 Misc 2d 581). The definitive nature of this policy was expressly set forth by a unanimous Court of Appeals in People ex rel. Scarpetta v Spence-Chapin Adoption Serv. (supra, p 195): "It cannot be doubted that the public policy of our State is contrary to the disclosure of the names and identities of the natural parents and prospective adoptive parents to each other.”
Under the existing statutory procedures in New York, a putative father does not have the status in an adoption proceeding of the father of a child born in wedlock (cf. Domestic Relations Law, § 111, with § 111-a, subd 3). The constitutionality of this distinction was upheld by the Court of Appeals in Matter of Malpica-Orsini (36 NY2d 568, app dsmd 423 US 1042).
In determining the import of the 1977 amendment to subdivision 4 of section 111-a of the Domestic Relations Law, consideration must be given to the reasons that generated the amendment. The thrust of section 111-a is made evident by the title of the section itself which reads: "Notice in certain proceedings to father of children born out-of-wedlock.” Its limited purpose as a procedural notice section is expressly delineated in subdivision 3 of section 111-a which reads as follows: "The sole purpose of notice under this section shall be to enable the person served pursuant to subdivision two to present evidence to the court relevant to the best interests of the child.” Clearly, section 111-a is not intended to give a putative father any substantive right he does not otherwise possess. This presents a question as to whether this involves an intent to unnecessarily vitiate the confidentiality of adoptions involving children born out of wedlock.
The 1977 amendment was an effort to incorporate into our *510 statutes the conclusion of the Court of Appeals, expressed in Matter of Malpica-Orsini (supra), as to the scope of the mandate contained in the holding of the United States Supreme Court in Stanley v Illinois (405 US 645). In the Stanley case, the United States Supreme Court indicated that constitutional reasons exist which require that a putative father, who had a relationship with his issue, be given the opportunity to be heard in a proceeding which could result in the extinguishment of this relationship. The proceeding in the Stanley case was one where the State, pursuant to an Illinois statute, sought to have the children involved declared wards of the State after their mother’s death. Matter of Malpica-Orsini (supra), indicates that the Stanley case mandates that fathers of children born out of wedlock be given notice of proceedings affecting their parental status. Naturally flowing from a right to notice is the right of a putative father to be heard, if he wishes, on the subject of the disposition of his children before a final determination is reached which can affect his relationship, if any, with the child. Neither the Malpica-Orsini case, nor our statutes, have in any way further expanded the substantive rights of a putative father in an adoption proceeding. He is given no right other than to be heard and have his views considered in reaching an appropriate determination that is in the best interests of the child.
The import of the procedural provisions of subdivision 4 of section 111-a of the Domestic Relations Law must also be evaluated in relation to the intrinsic purpose of adoptions. Paramount in the very existence of a procedure for the adoption of children is the desire of the State to promote the welfare of infants by facilitating their becoming parts of wholesome and stable family units in those cases in which this is not the existing circumstance. The logic and necessity for the strong focus on confidentiality of adoption information in order to achieve this goal is apparent. Often critical to the establishment of the complete parent-child relationship that is the aim of all adoption orders, is the elimination of the possibility of an appearance on the scene of a natural parent whose rights have been extinguished, and whose relationship with the child has been terminated. The only effective method for avoiding such an appearance is for the natural parents not to be aware of the identity of the adoptive parents. In viewing the importance of this confidentiality, sensitivity must also be shown to the ease with which adoptive parents can be imposed *511 upon financially, and otherwise, by a natural parent capable of periodically appearing on the scene as a threat to the sanctity of the parent-child relationship created by the order of adoption (see Matter of Malpica-Orsini, supra, pp 572-573).
It would be illogical to conclude that it was the intent of the Legislature to completely abandon confidentiality as to the identity of adoptive parents by a provision whose sole import is to give putative fathers, or alleged putative fathers, the opportunity to be heard in adoption proceedings, if they wish to be so heard. To determine otherwise would attribute to the Legislature an intent to have a lesser degree of confidentiality with reference to the adoption of a child born out of wedlock than exists in a proceeding with reference to a child born in wedlock, where such total disclosure is not necessary. In the latter case, a natural father whose consent is not required under subdivision 2 of section 111, need receive no more than a notice to show cause why the requested relief to extinguish his parental rights to facilitate an adoption should not be granted (Domestic Relations Law, § 111, subd 3). If the respondent father does not appear, there is no breach at all of the confidentiality of the identity of the adoptive parents.
The content of subdivision 1 of section 111-a further sustains the conclusion that the section in its entirety has no purpose other than to provide notice, and is not intended as an abandonment of the requirement for confidentiality set forth in subdivision 3 of section 111 and subdivision 4 of section 112 of the Domestic Relations Law. Subdivision 1 of section 111-a specifically provides that no notice whatsoever need be given to a putative father in an adoption proceeding, if he has previously had the opportunity to be heard in a proceeding to extinguish parental rights pursuant to section 384-c of the Social Services Law or has consented to the adoption by previously executing a surrender, pursuant to section 115-b of the Domestic Relations Law.
The improbability in most cases of the putative father even being located, let alone being interested enough to appear, is reflected in the statute itself. It is noted that the Legislature, within the framework of subdivision 4 of section 111-a recognized that the whereabouts of putative fathers frequently is not easily ascertainable. The alternative service provisions of subdivision 4 evinces a clear desire on the part of the Legislature not to burden the adoptive process with the mounting cost of notice by publication where after reasonable effort the *512 present whereabouts of a putative father cannot be ascertained. The provisions of the statute in those cases permit service by mail at the last known address of the putative father. This procedure is replete with the possibility of the notice and petition falling into the hands of strangers. Quite obviously, the Legislature never intended the details of the prospective adoptive relationship to be exposed to the knowledge of total strangers. It is further noted that even the party to whom the notice is addressed in many cases is only the "alleged” putative father. In fact, he may be a total stranger to the infant, with his unestablished purported status being unrelated to any actual biological circumstance.
The basic intent and purpose of subdivision 4 of section 111-a of the Domestic Relations Law can be achieved by its words being "restrained” so as to reconcile their meaning with other statutes which preclude disclosure of the identity of petitioners (Abood v Hospital Ambulance Serv., 30 NY2d 295, 298, supra). It is accordingly concluded that the intent and purpose of subdivision 4 of section 111-a of the Domestic Relations Law is fully satisfied by service of a notice of hearing and a copy of the petition in which the identity, residence and business address of the petitioners have been deleted. It is noted that notwithstanding the deletions herein allowed, the copy of the petition given to the putative father, or alleged putative father, still contains information as to the age of petitioners, marital history, religious faith, occupations, annual income, the manner in which they obtained the adoptee, how long the adoptee has resided with them and the agency which consents to the adoption. This provides the putative father with more than sufficient information to enable him to make a considered judgment with respect to whether it is in his own best interest or the best interest of the child for him to appear in the proceeding.
Petitioners may complete jurisdiction by service upon the alleged putative father of the notice of hearing and the petition in the redacted form hereinabove set forth. It is not necessary to herein reach the extent to which the disclosure of the identity of the petitioners may become necessary in order to give such putative father a fair opportunity to be heard in the relatively few cases in which a putative father will actually appear. The necessity for serving the petition in any form in order to give notice of an adoption to a putative father is a subject worthy of legislative reconsideration. Service of a *513 notice alone would impose upon an interested parent a burden no more onerous than to appear in the proceeding in order to obtain further information. This does not appear to be too high a level of action to expect of a parent who contends he has a position relevant to the best interests of the child he helped bring into the world.
Proceed accordingly.