OPINION OF THE COURT
Edward H. Lehner, J.
The issue presented here is whether the collapse of a portion of a public pier comes within the ambit of the so-called Pothole Law (Administrative Code of City of New York, § 394a-1.0, subd d, par 2) so as to require prior notice to the City of New York in order to maintain an action to recover for injuries sustained as a consequence thereof.
The complaint herein alleges that Pier 52, located near the intersection of Gansevoort and West Streets in lower Manhattan, is a pier open to the public and that plaintiff was caused to fall off the pier into the Hudson River as a result of the city allowing the pier to become “deteriorated and dangerous” and allowing the “logs or pilings attached to such Tier 52’ to collapse and to separate from its structure”. The complaint, however, does not specifically state the reason plaintiff ended in the river, though his attorney (not plaintiff) states in an affidavit that the accident occurred because a “wooden log upon which the plaintiff was sitting gave way and the plaintiff was propelled into the water”.
*603 The city moves to dismiss pursuant to CPLR 3211 (subd [a], par 7) or in the alternative for summary judgment, by reason of the failure of plaintiff to comply with the notice provisions of section 394a-1.0 (subd d, par 2) of the Administrative Code.
Although commonly thought of as only applicable to streets and sidewalks, the Pothole Law also applies to defects in wharves, providing in part as follows: “No civil action shall be maintained against the city for damage to property or injury to person or death sustained in consequence of any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, or any part or portion of any of the foregoing including any encumbrances thereon or attachments thereto, being out of repair, unsafe, dangerous or obstructed, unless it appears that written notice of the defective, unsafe, dangerous or obstructéd condition, was actually given to the commissioner of transportation or any person or department authorized by the commissioner to receive such notice, or * * * there was written acknowledgement from the city of the defective, unsafe, dangerous or obstructed condition, and there was a failure or neglect within fifteen days after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or the place otherwise made reasonably safe.” (Administrative Code, § 394a-1.0, subd d, par 2.)
This section, which became effective June 4, 1980, is partially modeled after the prior notice provisions contained in section 65-a of the Town Law, section 6-628 of the Village Law, and CPLR 9804. The Town Law section is similar to that of our Administrative Code, except that the former does not mention “wharves” and has an alternative provision to actual notice, to wit, constructive notice by reason of the condition existing “for so long a period that the same should have been discovered and remedied in the exercise of reasonable care and diligence”. (Town Law, § 65-a, subd 1.) The sections of the Village Law and CPLR (which contain duplicative provisions applicable to villages), also do not contain the term “wharf”, but they make no allowance for constructive notice.
Obviously from a reading of the above-quoted section, it literally covers more than patent defects. However, no *604 rational interpretation could require a person to give notice of a defect which is not readily visible. Citizens are not generally permitted to make inspections of supports to city property to ascertain conditions. Thus, the city could not validly impose a requirement for prior notice of a condition which the average person could not ascertain from normal observation of public areas. Although the city council in enacting the statute intended the city to have actual notice of a condition before it could be held liable for an injury resulting therefrom, it did not intend that a party do more than report what was observable.
For instance, although the Connecticut Turnpike Bridge that collapsed this year as a result of defective underpinnings was obviously “out of repair, unsafe, and dangerous”, with the consequence that the type of incident that occurred would come within the literal language of the prior notice statute, could the city validly argue, if such tragedy had occurred in New York City, that a person injured thereby would have had an obligation to inform the city that the bridge was dangerous? The court thinks not and holds that the only logical interpretation is to apply the law only to conditions which are visible on normal observation of a public area.
Buttressing this interpretation is the language from the Court of Appeals decision in Doremus v Incorporated Vil. of Lynbrook (18 NY2d 362) where dealing with an injury allegedly due to the failure of the village to properly maintain a stop sign, the court held that the prior notice provision of the Village Law was inapplicable stating (pp 365-366): “Its language seems to refer to actual physical defects in the surface of a street, highway, bridge, culvert, sidewalk or crosswalk and the reference to snow and ice seems to confirm this.” (Emphasis supplied.)
In not giving effect to the literal wording of the statute, the court is applying rules of construction enunciated in Abood v Hospital Ambulance Serv. (30 NY2d 295, 298) where it was said: “the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be adhered to” and “ ‘to effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning and operation, *605 and language general in expression may be subjected to exceptions through implication.’ ”
Applying the foregoing interpretation to the case at hand, if plaintiff fell into the Hudson because he tripped on a hole on the pier, even though caused by a separation of the underpinnings, a claim based thereon without prior notice would have to be dismissed. However, if the incident occurred for the reason set forth in plaintiff’s attorney’s affidavit, then the incident would be the result of a latent defect and prior notice would not be required.
Since the complaint does not clearly spell out how the incident occurred, the motion to dismiss the complaint is granted, with leave to serve an amended complaint within 20 days after service of a copy of this order with notice of entry.
Although not mentioned by the parties, plaintiff may wish to give consideration to pleading the alternative provision of the statute, to wit, written acknowledgement of an unsafe and dangerous condition. Although the court has seen no case interpreting this clause, it is aware that in most every mention by the city of the reasons for the need to construct Westway, one of the benefits stated is the demolition of the deteriorated piers.