*439 OPINION OF THE COURT
Edwin Margolis, J.
Claimants move for partial summary judgment holding defendant liable for their legal fees and expenses incurred in the defense of an action in the United States District Court for the Northern District of New York (Oneida Indian Nation v Williams, civ action No. 74-CV-167). In that action, the Oneida Indian Nation seeks possession of real property, located in New York, that is now occupied by claimants. The Oneida Nation claims title to the land on the ground that it was originally obtained from their ancestors by the State of New York in violation of Federal law.
This claim, for State payment of the claimants’ legal fees in the Federal action, is based on section 10 of the State Law, which reads as follows: "The Governor shall, at the expense of the state, employ counsel and provide for the defense of any action or proceeding, instituted against the state, or against any person deriving title therefrom, to recover lands within the state, under pretence of any claim inconsistent with its sovereignty and jurisdiction.” Claimants’ title to the land derived from grants and deeds issued by the State after it obtained the property from the Oneida Nation.
Claimants previously brought a CPLR article 78 proceeding in Supreme Court, Albany County (Williams v Cuomo, Sup Ct, Albany County, judgment entered Apr. 2, 1985). Justice Edward S. Conway directed that the Governor assume responsibility and provide for claimants’ defense in the Federal action. He rejected the State’s contention that State Law § 10 was not applicable to the Federal action in which claimants are engaged, relying on Matter of County of Broome v Cuomo (102 AD2d 266, affd 64 NY2d 1051), a factually similar proceeding dealing with another Indian land claim. Justice Conway severed that portion of the petition seeking reimbursement for legal services incurred prior to commencement of the article 78 proceeding; the severance was "without prejudice to their renewal of such claims in the Court of Claims.” Justice Conway’s decision identified October 12, 1984 as the date on which the State formally denied claimants’ request that it assume responsibility for their defense in the Federal action, and claimants acknowledge that that request had been made in a letter dated October 1, 1984. To date, the Governor has not complied with Justice Conway’s order that he provide for claimants’ defense. Claimants chose not to pursue contempt *440 proceedings before Justice Conway but instead have continued to retain their own counsel to defend them in the Indian claim. The instant claim is for amounts paid by claimants for legal services from inception of the Federal lawsuit.
Defendant does not now dispute that claimants are entitled to certain of their counsel fees pursuant to section 10 of the State Law. The State takes the position, however, that it is not liable for certain portions of the total counsel fees. The portions that the State would exclude are (1) any fees incurred before the Governor denied claimants’ request that the State assume responsibility for the defense; (2) any fees attributable to that portion of the Federal action seeking monetary damages, as opposed to occupancy and possession of the land; and (3) any fees attributable to claimants’ various efforts to obtain counsel fees from the State. With respect to the State’s last requested exclusion, it is sufficient to say that claimants have not requested reimbursement for such counsel fees and, in any event, they are clearly not entitled to the costs of such litigation under State Law § 10 or under New York case law and the general rule in this country (Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 21-22; City of Buffalo v Clement Co., 28 NY2d 241, 262-263).
The first issue that must be resolved is whether claimants are entitled to reimbursement of legal fees paid from the inception of the Federal action until the date on which the State formally denied their request for representation pursuant to State Law § 10. The statute, set out in full above, applies to two separate and distinct events: actions or proceedings instituted against the State, and actions or proceedings instituted against persons deriving title through the State. With respect to the former, the Governor would have prompt notice of the litigation and would be under an automatic obligation to defend.
A different situation obtains with respect to an action or proceeding against a person other than the State. First, there is no way in which the Governor or any other State official will receive automatic notification of such an action or proceeding. Second, even when the State is given immediate notification — either formally or informally — the statute cannot be construed to require the named defendant, against his will, to accept representation by counsel employed by the Governor. Consequently, as a matter of common sense and logic, a person wishing to avail himself of the benefits of section 10 of the State Law must affirmatively request repre *441 sentation from the Governor in order to trigger that official’s statutory obligation.
Obviously, this requirement is not explicitly set forth in the statute under consideration; it is, rather, an example of a casus omissus. As Ernst Freund has stated in his classic Standards of American Legislation (at 239 [1965]): "It is much easier to avoid placing in the same statute several provisions that do not harmonize with each other (which would reveal the defect of the statute on its face) than to succeed in making adequate provision for all correlative rights and obligations needed to insure a just and harmonious operation of the act. It is the difference between positive error and imperfection due to omission. The latter defect can in some cases be remedied by allowing the statute to be controlled or supplemented by common-law principles.” A casus omissus occurs when legislative drafters neglect to put into the statute something that is necessary for the proper operation of that law. The defect in State Law § 10 can be attributed to 18th and 19th century bill drafting techniques, which frequently lacked precision, and to the fact that the present statute incorporates, in haec verba, language first employed in 1796 and 1828.*
It is a general rule of statutory construction that in the absence of ambiguity, a court may not endeavor to supply what it views as an omission in the statute without transcending the judicial function. (Park of Edgewater v Joy, 68 AD2d 107.) However, although a court must give literal effect to unambiguous statutory language, an overriding rule is that the court must effectuate the purpose and intent of the legislation. To carry out this function, courts need not blindly adhere to the literal language of a statute if such language fails to express the clear overriding purpose of the legislation. (Abood v Hospital Ambulance Serv., 30 NY2d 295, 298, and cases cited therein.) In Matter of Meyer (209 NY 386, 389-390), the Court of Appeals stated, "To effect the intention of the *442 legislature the words of a single provision may be enlarged or restrained in their meaning and operation, and language general in expression may be subjected to exceptions through implication.”
The clear overriding purpose of the statute in question is to make the State ultimately responsible for defending against challenges to ownership of State land when those challenges are directed against the State government’s sovereignty and jurisdiction. It is not part of this purpose to deprive any private individuals of their ordinary rights to select legal representatives and to defend their land in any manner they wish. The necessary effect of the statute, therefore, is to allow a person who is sued for lands whose title he derived from the State to exercise one of two options: he may either arrange for his own defense or have the Governor assume that responsibility. The interpretation urged by claimants, which would require the Governor to impose a defense and counsel on claimants, is constitutionally suspect. If there are two possible interpretations of a statute, the court will accept that which avoids constitutional doubts. (Courtesy Sandwich Shop v Port of N. Y. Auth., 12 NY2d 379.)
To hold otherwise would require the Governor of this State to seek out all defendants against whom an action to recover land is pending, to determine whether such person derived title thereto from the State, and to impose on such person counsel of the Governor’s choice. This is, in the court’s view, an absurd construction of the statute.
In a similar case dealing with State Law § 10, the Appellate Division, Third Department, stated: "After the State refused the counties’ demand that counsel be provided, the counties had no choice but to retain counsel.” (County of Broome v State of New York, 119 AD2d 358, 361.) The clear inference of this comment is that the State must first refuse claimants’ demand before claimants could go out and retain counsel at the State’s expense.
The Federal lawsuit against these claimants was commenced in 1974, and it was clear from the beginning that the validity of title emanating from the State would be in issue. The State received relatively prompt notification of the litigation, as it was impleaded as a third party in 1975. However, the submissions before the court indicate that claimants did not request the State to assume responsibility for their defense, pursuant to State Law § 10, until October 1, 1984 — 10 *443 years after the need for such defense arose. The request was denied, in a timely fashion, 11 days later. On these facts and our earlier analysis of the statute, the State is not liable for litigation expenses incurred by claimants prior to October 12, 1984.
Claimants’ chief legal argument in support of their position that the State is responsible for periods prior to its refusal is based upon the holding of the Appellate Division in County of Broome v State of New York (119 AD2d 358, 361, supra) that the State’s refusal constitutes a continuing wrong. In fact, the Appellate Division was simply observing that the claim had not yet accrued for purposes of causing the Court of Claims Act time provisions to commence running. In that context, the concept of continuing wrong means that the wrong continues after the Governor’s refusal until such time as all damages are ascertained, thus obviating the necessity of filing a claim in this court within six months of such refusal by the Governor and every six months thereafter. It has no bearing on events occurring prior to the Governor’s refusal.
The other issue in contention is whether all of the legal services rendered in the Federal action must be offered to claimants, or otherwise paid for, by the State pursuant to State Law § 10. The statute requires the State to provide legal representation for "the defense of any action or proceeding * * * to recover lands” — in other words, for ejectment actions. The Appellate Division specifically so held in Matter of County of Broome v Cuomo (102 AD2d 266, 270, affd 64 NY2d 1051, supra). That case involved three separate underlying Federal actions, two of which were to recover real property and the other for money damages for use and occupation of the land sought to be recovered. Special Term denied claimants’ right to recover legal fees with respect to the third action but recognized their right with respect to the ejectment lawsuits, and that ruling was upheld on appeal.
Claimants’ attempt to distinguish the instant case from Matter of County of Broome (supra) on the ground that, in the instant case, there is only one underlying Federal lawsuit with two separate causes of action — one to recover land and the other for use and occupation — ignores the most elementary concepts of pleading. Any multiple cause of action complaint can be divided into its component parts and each cause of action may independently serve as a separate complaint. If a separate cause of action does not meet the requirements of an independent lawsuit, it is defective.
*444 In summary, that portion of claimants’ motion for summary judgment seeking reimbursement for legal services rendered by claimants’ private attorneys prior to October 12, 1984 is denied. The Governor has no obligation under section 10 of the State Law to provide legal representation to a private individual or entity until he has received a request for such representation and, consequently, such an individual cannot retain private counsel at State expense until his request has been denied.
That portion of claimants’ motion for summary judgment seeking reimbursement for legal services rendered by claimants’ private attorneys after October 12, 1984 is granted with respect to the costs of representation in connection with the cause of action for recovery of the land and denied with respect to the cause of action for money damages based on use and occupation of the land. At trial on the issue of the amount of damages, claimants will be required to identify for each billable item the date it was rendered and the specific cause of action to which it related. In the event that the legal services rendered with respect to recovery of the real property and use and occupation of the land are too intermingled to be separated, an equitable allocation formula will have to be developed.

 The State’s duty to defend against claims inconsistent with its sovereignty and jurisdiction was first established by chapter 25 of the Laws of the Nineteenth Session of the New York Legislature, which was enacted March 11, 1796. (1 RL 127.) Said act was codified in 1828 in language almost identical to the present statute. (1 Rev Stat of NY, part 1, ch 1, tit II, § 3.) In the first enactment of New York’s Consolidated Laws in 1892, that language was rearranged to the exact present form. (L 1892, ch 678, § 11.) An example of a modern statute that expressly requires a request to trigger a government’s obligation to defend an individual is found in section 50-k (4) of the General Municipal Law.