Titone, J.
(dissenting). The undisputed facts of this case reveal that the driver of defendant’s fire engine was responding to a general fire alarm at the county jail at the time of the accident with plaintiff. The driver of the apparatus was travelling at no more than 10 to 15 miles per hour with his sirens blaring and lights flashing when he proceeded past a red light signal at an intersection, pursuant to a statutory right of way granted to emergency vehicles. The fire truck was struck in the rear by plaintiff’s motorcycle when plaintiff failed to yield *514 the right of way to the pumper, despite his observation that all other surrounding traffic had come to a stop. The majority astonishingly concludes that this record provides sufficient evidence to support the jury’s finding that the driver of defendant’s emergency apparatus was reckless. Because the majority fails to appreciate the level of culpability required to hold the driver of an emergency vehicle liable for abuse of the statutory right-of-way privilege and because no rational view of the evidence supports the finding that the fire truck driver’s conduct was reckless, we respectfully dissent and vote to reverse and dismiss the complaint.
Vehicle and Traffic Law § 1104 (a) (2) provides that, when involved in an emergency operation, the driver of an emergency vehicle has the privilege to "[p]roceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may be necessary for safe operation.” Other motorists faced with an approaching emergency vehicle which is operating its lights and sirens "shall yield the right of way and shall immediately drive to a position * * * clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed” (Vehicle and Traffic Law § 1144 [a] [emphasis added]). These two provisions jointly operated to give defendant’s emergency vehicle a preemptive right of way, regardless of whether it faced a signal to stop.
No dispute exists here that defendant’s driver was operating an authorized emergency vehicle in response to a legitimate emergency or that the driver’s flashing lights and sirens gave notice of the truck’s approach that was "loud enough to be heard and given soon enough to be acted upon — so as to avoid a collision” (Abood v Hospital Ambulance Serv., 30 NY2d 295, 299). Thus, to the extent that the majority’s holding rests on the pumper truck driver’s purportedly improper conduct in passing the red light and on the presence of a green light in plaintiff’s favor, it is fundamentally at odds with the statute.
Having complied with all the other statutory prerequisites for exercise of the right-of-way privilege, defendant could be held liable for plaintiff’s injuries only if the fire truck driver’s conduct evinced a "reckless disregard for the safety of others” (Vehicle and Traffic Law § 1104 [e]; Saarinen v Kerr, 84 NY2d 494, 501 [decided today]). As we announced in Saarinen, a showing of "lack of due care under the circumstances” or a "momentary judgment lapse” will not suffice to establish the *515 municipality’s vicarious liability (id., at 501, 502). Rather, to prevail against the driver of an emergency vehicle, the plaintiff must prove that the actor has " 'disregarded] * * * a known or obvious risk that was so great as to make it highly probable that harm would follow’ ” (id., at 501 [emphasis added], quoting Prosser and Keeton, Torts § 34, at 213 [5th ed]).
In granting the right of way to emergency vehicles in contravention of normal traffic flow rules, the Legislature apparently recognized that some increased "risk of harm to innocent motorists and pedestrians” at intersections would have to be tolerated to further the public safety goals associated with the need for an immediate response to emergencies (Saarinen, supra, at 502). Indeed, we need not belabor the obvious dangers to public safety and order presented to defendant’s firefighters by the general alarm at the county jail — a call which, by one firefighter’s account, could be "smoke”, "fire” or "almost anything”.
Slight or momentary departures from traffic safety rules "made in the field under [such] highly pressured conditions” (Saarinen, supra, at 502) and pure judgment calls attendant to driving under emergent circumstances are not the types of actions to which liability for recklessness can reasonably be attached (see, Mitchell v State of New York, 108 AD2d 1033, 1035 [brief failure of patrol car to operate sirens and lights during chase not reckless]; see also, Garrett v City of Schenectady, 268 NY 219, 224, supra [no liability attached where fire truck driver turned his head first to the right and then to the left to scan traffic where a turn to the left first may have forewarned him of an accident]). In fact, the Legislature was aware that the driver of an emergency vehicle deliberately creates a risk to the public every time he or she exceeds the speed limit, passes a red traffic light or disobeys traffic flow rules pursuant to the statutory privileges. Thus, to rise to the level of recklessness within the context of the exercise of this emergency privilege, something greater than the deliberate risks normally associated with the suspension of the usual right-of-way rules must have been contemplated (e.g., Abood v Hospital Ambulance Serv., supra, at 299 [failing to give an audible warning while crossing an intersection against stop signal]). Otherwise, the privilege afforded by Vehicle and Traffic Law § 1104 (a) (2) would have no meaning.
A comparison of these facts with those in Abood v Hospital Ambulance Serv. (30 NY2d 295, supra) is instructive. In that *516 case, an "unreasonable risk” was created — and the statutory privilege forfeited — because the ambulance driver failed to sound his siren while crossing through an intersection against a stop signal. No such similar risk was created or ignored by the pumper’s driver in this case where the vehicle’s siren was sounded and the flashing lights were activated.
The majority strains to uphold the jury’s conclusion that defendant’s driver was aware of a serious risk which he consciously disregarded (majority opn, at 511). To reach this result, the majority relies on the fact that the driver of the apparatus was unsure of the color of the traffic light governing his entry into the intersection, and on other judgment calls he made while driving — i.e., that he accelerated "once in” the intersection, failed to properly scan all lanes of traffic and never saw plaintiff (id., at 508).
The majority’s focus on the wisdom of defendant’s driver’s split-second decision-making in driving is improper (see, Saarinen, supra, at 502; Garrett v City of Schenectady, supra) and obscures what really transpired here. The driver of the apparatus, responding to a potentially life-threatening fire alarm, approached an intersection at 10 to 15 miles per hour with his lights flashing and sirens blaring to warn other motorists to yield the right of way. By all accounts, he gave a blast of the air horn prior to entering the intersection.
The fire truck driver was entitled to rely on the fact that all other drivers are required by law to heed the warnings and clear the intersection. Based on the uncontroverted proof that plaintiff failed to yield the right of way to the pumper, and that plaintiff slammed into the rear wheel well of defendant’s truck, the jury’s conclusion that plaintiff was free of comparative fault is not supportable, and, indeed, is bewildering. By plaintiff’s own admission, over a dozen other vehicles on the road had pulled to the side and stopped to permit the emergency vehicle to pass.
While the risk did exist that someone would not hear the sirens, that possibility was remote. The fact that road noise may have rendered defendant’s sirens and air horn inaudible to a motorcyclist such as plaintiff (see, majority opn, at 508) did not require the fire truck driver to change or order his conduct in anticipation of that slight risk. We are instructed by "a long line of railroad and other cases depending on audible warning, that the rule has to be, not whether the signal was heard, but whether it was given” (County of *517 Broome v Binghamton Taxicab Co., 276 App Div 438, 443). Thus, the failure of the pumper truck’s driver to accommodate the motorcyclist’s unwitting and unfortunate approach did not render his conduct reckless. Had plaintiff’s vehicle been large and yellow and equipped with flashing lights and sirens, defendant’s driver’s failure to notice him would have been more inexcusable.
Under the facts of this case, little significance should be placed on the defendant’s driver’s failure to know the color of the light when he entered the intersection. Even if he had known the light was red, he was "not bound by the usual command of the red light” (County of Broome v Binghamton Taxicab Co., 276 App Div 438, 439, supra), and was statutorily privileged to proceed so long as he fulfilled his obligations to slow down before crossing the intersection and to warn other drivers of his approach. Furthermore, the likelihood that the outcome would have been different if he had observed the color of the light is slight, since the undisputed testimony establishes that prior to entering the intersection the driver was travelling at approximately 10 to 15 miles per hour. Realistically, defendant could not have gone much slower without coming to a stop — a result that would effectively eviscerate the privilege to proceed past a red light after appropriate deceleration.
Similarly, the wisdom and adequacy of defendant’s driver’s other actions, such as how and when he chose to turn his head to view approaching traffic, the timing of his application of pressure to the gas pedal and his failure to know the color of the light — which he had a privilege to pass — were judgment calls which "must be weighed in the light of the [emergent] circumstances” as they unfolded, not in retrospect (Stanton v State of New York, 29 AD2d 612, 614, affd 26 NY2d 990, 991). Although these actions may have constituted, at most, a momentary lapse in judgment, something more than that is required to demonstrate the type of culpable conduct that rises to the level of reckless disregard for the safety of others within the contemplation of Vehicle and Traffic Law § 1104 (e) (see, Saarinen v Kerr, 84 NY2d 494, 502, supra; Mitchell v State of New York, 108 AD2d 1033, 1034, supra).
Indeed, the result reached by the majority in this case is virtually irreconcilable with this Court’s holding in Saarinen, and the majority is guilty of applying "the governing standard of recklessness differently” (majority opn, at 512). In Saarinen, *518 we rejected the plaintiffs contention that a police officer acted recklessly within the meaning of Vehicle and Traffic Law § 1104 (e) in pursuing an offending driver at 60 m.p.h. on a wet roadway in a zone where the posted speed limit was half that rate. No material distinction can be discerned between the degree of culpability evidenced by the acts of the municipal agents in these two cases.
Here, the defendant’s driver’s undisputed use of the required visual and audible warning devices, coupled with his slow rate of speed and his failure to violate any other traffic rule or departmental policy were actions consistent with the statutory mandate that an emergency vehicle driver proceed in a nonreckless manner (cf., Abood v Hospital Ambulance Serv., 30 NY2d 295, 299). Thus, the facts "show[ ] at most a pure accident” (Garrett, 268 NY, at 224, supra) and the complaint against defendant municipality should be dismissed.
Chief Judge Kaye and Judges Smith and Ciparick concur with Judge Bellacosa; Judge Titone dissents and votes to reverse in a separate opinion in which Judges Simons and Levine concur.
Order affirmed, with costs.