*198 OPINION OF THE COURT
Edward H. Lehner, J.
The novel issue raised by the motions before me for summary judgment by Hudson Street Associates, LLC (the sponsor) and the Board of Managers of the 195 Hudson Street Condominium is whether a subcontractor who performed work on the common elements in connection with the conversion of the building at 195 Hudson Street to condominium residential ownership can recover its alleged unpaid balance from the board and the sponsor, pursuant to the trust fund provisions of subdivision (2) of Real Property Law § 339-Z, for their failure to pay such balance from common charges collected from unit owners.
In 1998 the sponsor, as owner of the building, entered into a contract with defendant K & J Construction Co., L.P for the conversion of the building, then used as a warehouse, to residential use. In August of that year K & J entered into three separate subcontracts with plaintiff to perform roofing, parapet and exterior masonry work on the building. In April 1999, during the course of construction, the sponsor recorded a declaration pursuant to Real Property Law article 9-B establishing a plan of condominium ownership (the declaration). Between May 1999 and May 2000, 27 of the 28 condominium units created were sold by the sponsor, which controlled the board until March 2000 when unit owners were elected and assumed control.
Plaintiff performed work pursuant to its contracts with K & J from November 1998 until March 2000, and now claims that it ig owed approximately $168,000 pursuant to those contracts.[1] Its original action to foreclose its mechanic’s lien based on such claim was dismissed by me for failure to file liens against the tax lots created upon the recording of the declaration, as required by subdivision (7) of Lien Law § 9 (NYLJ, Dec. 19, 2001, at 23, col 2, affd 304 AD2d 306 [2003]). Thereafter, plaintiff commenced a new action against the sponsor and the board[2] to recover the claimed balance owing based on asserted violations of the trust fund provision of subdivision (2) of Real Property Law § 339-Z, which provides as follows:
“Labor performed on or materials furnished to a unit shall not be the basis for the filing of a lien pursuant to article two of the lien law against the *199 unit of any unit owner not expressly consenting to or requesting the same, except in the case of emergency repairs. No labor performed on or materials furnished to the common elements shall be the basis for a lien thereon, but all common charges received and to be received by the board of managers, and the right to receive such funds, shall constitute trust funds for the purpose of paying the cost of such labor or materials performed or furnished at the express request or with the consent of the manager, managing agent or board of managers, and the same shall be expended first for such purpose before expending any part of the same for any other purpose.” (Emphasis supplied.)
Plaintiff contends that although the sponsor controlled the board from the time of the recording of the declaration in April 1999 until March 2000 (by which time the work was completed), the board is now liable for the amount owing as it was required to employ the common charges it received for the payment of the balance owing for the renovation work. Plaintiff argues that such result is equitable since a substantial portion of its work was performed after unit owners commenced moving into the building in June 1999. As for the sponsor, plaintiff maintains that as a “manager” of the condominium, it is equally liable.
On the other hand, the board and the sponsor both assert that it would be grossly unfair to require the board to have to collect charges from the unit owners to pay plaintiff the claimed balance as the owners paid the sponsor for their units pursuant to an offering plan which indicated that the sponsor was obligated to complete the renovation of the building.[3]
Clearly, the construction undertaken in converting the building to residential use was not at the “express request” of the board as the contract with K & J for such work was executed in August 1998 and never modified, whereas the board did not come into existence until the declaration was recorded in April 1999. However, upon such recording, a board of managers was established, the members of which, until unit owners were elected in March 2000, were nominees of the sponsor. It is noted that the work performed by plaintiff was completed in March 2000, which is just prior to the time the unit owners assumed control of the board.
*200 While it cannot be said that the construction performed by plaintiff was at the “express request” of the board, it can reasonably be argued that the “labor or materials performed or furnished [were] . . . with the consent of the” board, although its members were nominees of the sponsor. There is nothing in the statute that requires that the “consent” be in any particular form. The permission by a board of managers to allow work to be performed in premises controlled by it may be deemed the necessary statutory “consent.”
Section 2.2 of the bylaws of the condominium provides that the board (unless it incorporates, which it has not done) has “the status conferred upon unincorporated associations” under the General Associations Law. There is nothing in such law whereby a change in membership of an unincorporated association would affect its liability for prior actions. Hence, any liability created by acts of the board when controlled by the sponsor would normally remain the board’s liability when control thereof was assumed by the unit owners. The consequence of such conclusion is that a literal reading of section 339-Z would result in the imposition of liability upon the board for its failure to collect common charges to pay for the improvements made by plaintiff. To state the result of such an interpretation is to demonstrate its inequity as the effect would be to require unit owners, who paid the sponsor for a complete renovated unit, to also have to pay a second time for a portion of the cost of renovation through increased common charges. I find such result would not be in accord with the intent and purpose of the statute. In discussing a court’s duty to avoid a seemingly unintended result from a literal reading of a statute, the Court of Appeals wrote in Abood v Hospital Ambulance Serv. (30 NY2d 295, 298 [1972]):
“While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect to its plain meaning . , . , the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be adhered to . . . Rather, [t]o effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning and operation, and language general in expression may be subjected to exceptions through implication.” (Internal quotation marks omitted.)
The evident purpose of the trust fund provision is to provide a contractor who performs work on the common elements of a *201 condominium with a means to secure payment as, unless the unanimous consent of the unit holders is obtained, no lien can be filed against the property. I conclude that (absent contrary provisions in the offering plan) a proper application of the trust fund provision of the statute should generally be to limit the liability of a board of managers to situations where the “express request” or “consent” referred to therein is provided by a board selected by the unit holders. If they are to pay for improvements to the common elements, it should be the acts of their elected representatives which create the liability. Thus, under the facts herein I find no liability on the part of the board based on the alleged statutory violation.
The further contention of plaintiff that the board assumed the liability of the sponsor pursuant to paragraph 24 of the declaration is of no aid to plaintiff as the sponsor had no contractual relationship with plaintiff, and such assumption only applied to obligations “set forth herein,” and the declaration itself did not contain any specific construction obligations on the part of the sponsor.
The claim herein against the sponsor is devoid of merit as it was not in a position to collect common charges from unit owners and thus cannot be liable for failing to turn over such charges to the plaintiff. In fact, it paid common charges to the board applicable to its unsold units. Its control of the board prior to March 2000 does not result in liability as its nominees to the board, as held herein, had no authority to collect common charges from unit holders to pay for the improvements required to be performed by the sponsor.
Accordingly, the motions of the board and the sponsor are both granted.

. The sponsor has asserted that no money is owing due to defective work.

. The action against codefendant Jeffrey M. Brown, Inc. was dismissed by me as per judgment filed April 8, 2003.

. Although no copy of the offering plan was submitted on this motion, it was acknowledged by the sponsor that pursuant to the provisions thereof it represented that it would perform and pay for the conversion of the building.