OPINION OF THE COURT
Memorandum.
The order of the Appellate Division, insofar as it affirmed the judgment of Supreme Court should be affirmed, with costs.[1]
A jury awarded a verdict for personal injuries sustained by plaintiff who was permanently paralyzed from the midchest down when his spinal cord was severed by a bullet fired by Officer Rodriguez, an employee of defendant. The theory of plaintiffs case as submitted to the jury was common-law negligence[2] — i.e., that Officer Rodriguez, in employing deadly physical force in an effort to apprehend plaintiff, did not exercise that degree of care which would reasonably be required of a police officer under similar circumstances (see, e.g., Flamer v City of Yonkers, 309 NY 114; Herndon v City of Ithaca, 43 AD2d 634, 635; Prosser and Keeton, Torts § 26, at 155-156 [5th ed]; 2C Warren, Negligence, Policemen and Firemen, § 84.01 [1] [b] [4th ed 1990]). According to plaintiffs testimony and other proof, plaintiff was unarmed and running *926 away from the scene of the attempted robbery when Officer Rodriguez shot him in the back. The Appellate Division affirmed, with one dissent, and granted defendant leave to appeal to this Court.
The principal question is a narrow one: whether the evidence in the record warrants the trial court’s denial of defendant’s dismissal motion made at the close of plaintiff’s case and renewed at the close of the evidence. In deciding whether plaintiff has made out a prima facie case for submission to the jury, of course, a court must be "guided by the rule that the facts adduced at the trial are to be considered in the aspect most favorable to [plaintiff] and that [plaintiff is] entitled to the benefit of every favorable inference which can reasonably be drawn from those facts” (Sagorsky v Malyon, 307 NY 584, 586). It is settled that negligence cases by their very nature do not lend themselves to summary dismissal "since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination” (Ugarriza v Schmieder, 46 NY2d 471, 474; see also, Andre v Pomeroy, 35 NY2d 361, 364-365).
Here the evidence presents sharp factual issues. The key question — whether Rodriguez saw a violent crime in progress —is disputed. Plaintiff testified that when he was shot he had fled down a flight of stairs and was already some distance away from the scene of the attempted robbery and from Officer Rodriguez who was at the top of the stairs. Plaintiff stated that he was running away from Officer Rodriguez when Officer Rodriguez fired and hit him twice in the back. Officer Rodriguez, on the other hand, testified that the shooting occurred at the top of the stairs. Plaintiff and his companion, according to Rodriguez, were lunging toward him and only four feet away when he fired. Corroborating plaintiff’s testimony are the following items of proof: plaintiff was shot in the back; blood was found only on the platform at the bottom of the stairs where plaintiff was lying; according to expert testimony plaintiff could not have run down the stairs after the bullet severed his spinal cord; both the victim and the officer accompanying Rodriguez testified that plaintiff did not lunge at Rodriguez. The victim himself testified that he was standing against the wall when the officers approached, and plaintiff fled down the stairs before shots were fired.
Defendant cites the Supreme Court’s decision in Tennessee v Garner (471 US 1) and argues that that case, in some *927 way, entitles it to a dismissal. But the rule in Tennessee v Garner deals with the protections guaranteed by the Federal Constitution for the person being arrested — not for the arresting police officer or the municipality. It establishes the minimum standard of care which a police officer must exercise in making an arrest to avoid violation of the arrestee’s Fourth Amendment rights. Contrary to defendant’s contention, Tennessee v Garner does not create a limitation on plaintiff’s right to recover or a shield of immunity for a municipal defendant in a common-law negligence action. Even if the constitutional standard of care under Tennessee v Gamer were adopted as the precise standard for common-law negligence, there would still be factual issues requiring a trial including, most significantly, whether it was reasonable for Rodriguez to believe that the use of deadly force was appropriate and necessary under the circumstances.
Nor, again contrary to defendant’s contentions, is there any basis for dismissal under Penal Law § 35.30. Penal Law § 35.30 sets forth the circumstances when a police officer, charged with criminal conduct for using deadly physical force in making an arrest, can claim that the conduct was justified and, therefore, not criminal. The question of whether a police officer’s conduct is justified in a criminal case is, of course, a factual matter for the jury. Similarly, if Penal Law § 35.30 were used as the sole measure of the standard of care required of Officer Rodriguez here, there would be triable issues for the jury including whether Rodriguez could have reasonably believed that deadly force was appropriate and necessary under the circumstances.
Although the dissenters would have it otherwise, this is a negligence case governed not by Federal law but by the common law of this State. In deciding the case we must, of course, take the view of the evidence most favorable to the plaintiff. The factual issues were sharply defined: whether Officer Rodriguez came upon the scene during or after the mugging; whether Officer Rodriguez saw any evidence that plaintiff had committed a violent crime; whether, firing from the top of the stairs, Officer Rodriguez hit the unarmed plaintiff in the back and severed his spinal cord while he was running away at the bottom of the stairs or whether Rodriguez hit plaintiff while he was four feet away and lunging at Rodriguez. It was plaintiff’s right to have these factual issues decided by the jury.
The fatal flaw in both dissents is their failure to view the *928 facts in the light most favorable to plaintiff, which the law requires us to do. Instead, the dissent of Judge Bellacosa states that a team of officers "witnessed plaintiff McCummings rummaging through [the victim’s] pockets as another mugger held him down in a choke hold” and that "[c]oncededly, [the victim] suffered serious bodily harm,” while Judge Titone’s dissent states the police officers "came upon what was clearly a mugging” with a scene that "left no room for doubt that a crime of violence * * * had just occurred.” The dissents neglect the crucial fact that the most favorable view of the evidence for plaintiff is that Officer Rodriguez did not see a mugging and did not know whether a violent crime had been threatened or committed. Deadly force of course may be appropriate in some circumstances to prevent the flight of a violent felon. However, this record does not support the conclusion, as a matter of law, that deadly force was used for this purpose.
To be sure, plaintiff committed a crime but it is the province of the criminal, not the civil, justice system to punish him for his wrong. He has been convicted and will be dealt with as the law requires. In fulfilling our judicial responsibilities, we may not, as is suggested, depart from established principles of law to avoid what may to some seem to be an unacceptable resolution of the factual disputes.
Defendant’s remaining contentions are either unpreserved or without merit.

. The appeal, insofar as it is taken from that portion of the Appellate Division order which affirmed the order of Supreme Court denying defendant’s postjudgment motion to vacate and set aside the verdict and judgment, should be dismissed for nonfinality.

. Plaintiff’s second cause of action (for defendant’s negligent screening, training and supervision of its employees) and his third cause of action (for violation of his Fourth Amendment rights brought under 42 USC § 1983) were both dismissed at the close of plaintiff’s case.