84 N.Y.2d 505 (1994)
644 N.E.2d 993
620 N.Y.S.2d 302
Mark W. Campbell, Respondent,
v.
City of Elmira, Appellant.
Court of Appeals of the State of New York.
Argued September 20, 1994.
Decided December 1, 1994.
Levene, Gouldin & Thompson, Vestal (John L. Perticone of counsel), for appellant.
David J. Clegg, Kingston, for respondent.
Chief Judge KAYE and Judges SMITH and CIPARICK concur with Judge BELLACOSA; Judge TITONE dissents and votes to reverse in a separate opinion in which Judges SIMONS and LEVINE concur.
*507 BELLACOSA, J.
The issue on this appeal is whether any rational view of the trial evidence supports the jury verdict that the City of Elmira's fire truck driver acted with reckless disregard of the safety of others (Cohen v Hallmark Cards, 45 N.Y.2d 493, 499; Vehicle and Traffic Law § 1104 [e]). Plaintiff, a motorcyclist, won a jury verdict based on proof of defendant's driver's failure to satisfy the statutory standard of care. The Appellate Division affirmed the verdict and judgment in that material respect. Defendant appeals on a two-Justice dissent predicate. It argues that plaintiff's proof is insufficient as a matter of law *508 to support the verdict. We conclude that the Appellate Division order should be affirmed because the jury had a rational evidentiary basis to find that the City of Elmira, through its driver, acted with reckless disregard of the safety of others.

I.
In the late morning on August 4, 1986, plaintiff Campbell sustained personal injuries when his motorcycle struck defendant's fire truck in the intersection of Clemens Center Parkway and East Second Street in the City of Elmira. Plaintiff was travelling in the left passing lane of Clemens Center Parkway. Defendant's yellow pumper fire truck was proceeding on East Second Street in response to a general alarm at the county jail. The accident occurred when defendant's truck proceeded through the intersection at a speed of 10 to 15 miles per hour against a red light. Plaintiff, approaching with a green light in his favor, collided with the rear wheel well of the fire truck after he unsuccessfully attempted to stop his motorcycle upon noticing the fire truck entering the intersection. Plaintiff claims that he engaged his brake as soon as he saw the fire truck, prior to his reaching the intersection. His motorcycle left a skid mark of 44 feet 5 inches. Plaintiff testified that he did not hear any horns, sirens or warning sounds.
The evidence at trial revealed numerous disputed issues of fact and credibility regarding the parties' sharply differing versions of the happening of the accident. Notably, conflicting testimony and inferences emerged regarding whether the fire truck driver ever looked towards the lane and direction that plaintiff was travelling on Clemens Center Parkway before the defendant's driver entered the intersection; whether defendant's driver accelerated or decelerated once in the intersection; whether any emergency soundings were heard; and whether defendant's driver even knew the color of the light when he entered the intersection. The emergency truck driver acknowledged at trial that he had a statutory duty to check the color of the light prior to proceeding into and through the intersection because that would affect the level of care he was obligated to satisfy in going forward, even with an emergency right of way.
After presentation of evidence by both sides, the jury deliberated and returned a plaintiff's verdict. The City, through its driver employee, was found responsible for recklessly disregarding *509 the safety of others in the operation of the fire truck and proximately causing serious injuries to plaintiff. The jury found no comparative fault against plaintiff and awarded him damages.
The Appellate Division, appropriately evaluating the evidence after a jury verdict and allowing, as required, for the inferences in the light most favorable to a plaintiff in such procedural circumstances, essentially affirmed, finding the verdict rationally supported by the evidence (Campbell v City of Elmira, 198 AD2d 736). On an aspect not in dispute on this appeal, the Appellate Division reduced the award by $55,000 as duplicative damages and, as so modified, affirmed. Two Justices dissented, voting to reverse the judgment and dismiss the complaint on the ground, in their view, that the evidence was insufficient as a matter of law to support a verdict of reckless disregard of the safety of others. The dissenting Judges in this Court essentially take that view of the case as well.

II.
The resolution of the pivotal evidentiary question starts with a consideration of the governing Vehicle and Traffic Law statute. After reciting the privileges of an emergency vehicle driver, Vehicle and Traffic Law § 1104 (e) states in its entirety: "The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." Under the procedural circumstances presented, that standard must be factored within the well-settled confines of the narrowly restricted level of appellate review governing "insufficiency-as-a-matter-of-law" challenges, especially as to affirmed jury verdicts (Cohen v Hallmark Cards, 45 N.Y.2d 493, 499, supra; contrast, Zuckerman v City of New York, 49 N.Y.2d 557, 562 [discussing summary judgment review standard]).
We have recently reiterated that the "relevant inquiry [is] whether `there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial'" (Mirand v City of New York, 84 N.Y.2d 44, 48-49 [emphasis added] [citing Cohen v Hallmark Cards, 45 N.Y.2d 493, 499, supra]; see also, Shante D. v City of New York, 83 N.Y.2d 948; *510 McCummings v New York City Tr. Auth., 81 N.Y.2d 923, 926, cert denied ___ US ___, 114 S Ct 548). When it can be said that "it would not be utterly irrational for a jury to reach the result it * * * determined * * *, the court may not conclude that the verdict is as a matter of law not supported by the evidence" (Cohen v Hallmark Cards, supra, at 499 [emphasis added]). Based on these rigorous standards under our governing precedents, the jury verdict and finding in this case  that defendant is liable because its emergency vehicle violated the defined boundaries of Vehicle and Traffic Law § 1104 (e)  satisfy the minimal "not utterly irrational" appellate review test (id.).

III.
We begin our substantive consideration of the merits with the particular statutory description of the reckless disregard standard (Vehicle and Traffic Law § 1104 [e]). The analysis partakes of a precise statutory formulation, a general intentionality concerning the alleged wrongdoer's actions, and other customary features of recklessness, i.e., disregard of a known or obvious risk so great as to make it highly probable that harm would follow and done with conscious indifference to the outcome (see, Vehicle and Traffic Law § 1104 [e]; see also, Prosser and Keeton, Torts § 34, at 212-214 [5th ed]; compare, Saarinen v Kerr, 84 N.Y.2d 494, 501 [decided today]; compare also, Pavia v State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 453; Colnaghi, U.S.A. v Jewelers Protection Servs., 81 N.Y.2d 821, 823-824).
This Court's efforts to provide uniformity and understanding of the operative standard of care do not occur in a vacuum, any more than our struggle to apply the agreed-upon standard to varied fact patterns in different procedural settings does. We should not overlook the fact, for example, that the simple word, recklessness, has a long and multisourced history. The variety of sources of authority should appropriately be tapped to help inform our analysis and articulation. We should recognize, too, that the application of the adopted formulation must accord with the appropriate procedural context in which standards of proof and appellate review modalities must be aligned and have relevance, be they preponderance of evidence, as in the instant case, or as a matter of law on a summary judgment nonevidentiary record (Zuckerman v City of New York, 49 N.Y.2d 557, 562, supra).
We are in total agreement that parties may be found to *511 have acted in violation of the statutory formulation when they consciously  and, thus, with general intentionality, not necessarily with intent to cause particular injury  disregard known serious risks of harm. The decision to ignore a grave risk, which is likely to result in harm to others, may satisfy the intentional aspect sufficient to impose liability (see, Prosser and Keeton, op. cit., at 212-214; see also, Pavia v State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 453, supra; see also, Colnaghi, U.S.A. v Jewelers Protection Servs., 81 N.Y.2d 821, 823-824, supra).
We apply the Vehicle and Traffic Law civil statutory standard, based on a fusion of the variety of sources of authority. Our decision that the evidence at this trial rationally supports the jury's conclusion respects the jury's deliberations in weighing and resolving disputed fact and credibility questions, and in arriving at its judgment that defendant's driver acted intentionally, while aware of a grave risk which he consciously disregarded and knowingly ignored in a circumstance of high probability that harm would ensue. From evidentiary rooted findings, the jury could rationally have concluded that the experienced fire truck operator intentionally violated the statutory mandate when he recklessly flaunted the risks of proceeding in an emergency setting into an intersection against a red traffic light, indifferently and in disregard of any modicum of statutorily required attentiveness (see also, Vehicle and Traffic Law § 1104 [b] [2]; § 1144 [b]).
Defendant's claims and the dissenting opinion's assertions notwithstanding, this is not a case where the fire truck driver fulfilled his corresponding part of the statutorily imposed obligations to take nonreckless safety and due care precautions for others, in order to avail himself of the emergency right-of-way dispensation from observing usual traffic controls. This is not simply a case of a driver running a red light and committing mere negligence. This case is about the jury's consideration and resolution of defendant driver's more flagrant, nuanced and complex, conscious violation of Vehicle and Traffic Law § 1104 (e). Our disagreement with our dissenting colleagues in this case, thus, turns essentially, indeed solely, on the application of the particular statutory standard of care.

IV.
By contrast, in Saarinen v Kerr (84 N.Y.2d 494, supra), the Court is unanimous with respect to the result and application *512 of the rule and concludes that no triable issues of fact are presented. The Court in that case could discern no triable or reasonable view of the record to support a possible violation of the statutory standard of care in a municipal emergency context in the summary judgment procedural mode in which that case comes to us for review. Moreover, Saarinen v Kerr (84 N.Y.2d 494, supra) presents a once-more removed vicarious liability setting in that the pursued driver, and not the pursuing officer, was the actor who crashed into and injured the plaintiff in that case. It is important to emphasize, too, the cautiously progressive series of actions taken by the police officer in Saarinen in pursuing a manifestly dangerous drunk driver. Because no triable issues of fact are presented, unlike the instant case, we agree that defendant in that case is plainly entitled to summary judgment. The record there satisfies us that the officer acted in accordance with the statute as a matter of law (Saarinen v Kerr, 84 N.Y.2d 494, supra).
Notably, the instant case involves very different facts and was tried before a jury because of sharply disputed facts and inferences, and resulted in a plaintiff's jury verdict and an affirmance by the Appellate Division. While some of our colleagues would upset those results by applying the governing standard of recklessness differently because they see no material variations from Saarinen v Kerr (id.), we respectfully disagree for the reasons we have stated.

V.
Moreover and importantly, the Legislature's choice of words in Vehicle and Traffic Law § 1104 (e) reflects a carefully calibrated standard. Subdivisions (a) through (d) relieve emergency vehicle personnel and their municipal employers of ordinary traffic observance responsibilities. We are unanimous, however, that subdivision (e) attaches a qualification to the exemption from liability.
On the one hand, the more rigorous standard before allowing for municipal liability arising out of emergency circumstances accommodates the realities of the dangerous conditions encountered by officers in performing their municipal duties with necessary dispatch and dispensation from ordinary care. On the other hand, though, the Legislature retains and recognizes the potential for liability as a protection for the general public against disproportionate, overreactive conduct. *513 Conduct measured against such a calibrated formulation is not always or easily resolvable as a matter of law without some appropriate fact-finding forum and process, any more than simple negligence usually is. The more rigorous statutory test before allowing liability thus retains some incentives for moderating and deescalating the already dangerous situations when emergency personnel are engaged in their valiant and important services. Thus, while the Legislature shields municipalities from simple negligence and mere errors in judgment, it also protects innocent victims and the general public by expressly not relieving emergency operators and their municipal employers of all reasonable care (see, Vehicle and Traffic Law § 1104 [e] [employing reckless disregard, and not intentional harm, standard for imposing liability]; see also, Vehicle and Traffic Law § 1104 [b] [2] [under emergency conditions, emergency vehicle driver may proceed past red light "only after slowing down as may be necessary for safe operation"]; Vehicle and Traffic Law § 1144 [b] [while emergency vehicle operator has right of way, emergency driver is not relieved of duty to drive with reasonable care for all persons using the highway]).
The narrow scope of appellate evidentiary review, when factual and credibility issues are in such dispute, supports giving prudent deference to the traditional, trusted jury process, so long as the required rationality minimum of evidence is adduced to show that the statutory standard of care has been violated. In affirming the Appellate Division's decision which upheld the jury verdict, the Court in this case fulfills its assigned function by faithfully applying these well-established evidentiary rules of care and appellate review.
We have considered appellant's additional points on appeal and conclude that they are without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
TITONE, J. (dissenting).
The undisputed facts of this case reveal that the driver of defendant's fire engine was responding to a general fire alarm at the county jail at the time of the accident with plaintiff. The driver of the apparatus was travelling at no more than 10 to 15 miles per hour with his sirens blaring and lights flashing when he proceeded past a red light signal at an intersection, pursuant to a statutory right of way granted to emergency vehicles. The fire truck was struck in the rear by plaintiff's motorcycle when plaintiff failed to yield *514 the right of way to the pumper, despite his observation that all other surrounding traffic had come to a stop. The majority astonishingly concludes that this record provides sufficient evidence to support the jury's finding that the driver of defendant's emergency apparatus was reckless. Because the majority fails to appreciate the level of culpability required to hold the driver of an emergency vehicle liable for abuse of the statutory right-of-way privilege and because no rational view of the evidence supports the finding that the fire truck driver's conduct was reckless, we respectfully dissent and vote to reverse and dismiss the complaint.
Vehicle and Traffic Law § 1104 (a) (2) provides that, when involved in an emergency operation, the driver of an emergency vehicle has the privilege to "[p]roceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may be necessary for safe operation." Other motorists faced with an approaching emergency vehicle which is operating its lights and sirens "shall yield the right of way and shall immediately drive to a position * * * clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed" (Vehicle and Traffic Law § 1144 [a] [emphasis added]). These two provisions jointly operated to give defendant's emergency vehicle a preemptive right of way, regardless of whether it faced a signal to stop.
No dispute exists here that defendant's driver was operating an authorized emergency vehicle in response to a legitimate emergency or that the driver's flashing lights and sirens gave notice of the truck's approach that was "loud enough to be heard and given soon enough to be acted upon  so as to avoid a collision" (Abood v Hospital Ambulance Serv., 30 N.Y.2d 295, 299). Thus, to the extent that the majority's holding rests on the pumper truck driver's purportedly improper conduct in passing the red light and on the presence of a green light in plaintiff's favor, it is fundamentally at odds with the statute.
Having complied with all the other statutory prerequisites for exercise of the right-of-way privilege, defendant could be held liable for plaintiff's injuries only if the fire truck driver's conduct evinced a "reckless disregard for the safety of others" (Vehicle and Traffic Law § 1104 [e]; Saarinen v Kerr, 84 N.Y.2d 494, 501 [decided today]). As we announced in Saarinen, a showing of "lack of due care under the circumstances" or a "momentary judgment lapse" will not suffice to establish the *515 municipality's vicarious liability (id., at 501, 502). Rather, to prevail against the driver of an emergency vehicle, the plaintiff must prove that the actor has "`disregard[ed] * * * a known or obvious risk that was so great as to make it highly probable that harm would follow'" (id., at 501 [emphasis added], quoting Prosser and Keeton, Torts § 34, at 213 [5th ed]).
In granting the right of way to emergency vehicles in contravention of normal traffic flow rules, the Legislature apparently recognized that some increased "risk of harm to innocent motorists and pedestrians" at intersections would have to be tolerated to further the public safety goals associated with the need for an immediate response to emergencies (Saarinen, supra, at 502). Indeed, we need not belabor the obvious dangers to public safety and order presented to defendant's firefighters by the general alarm at the county jail  a call which, by one firefighter's account, could be "smoke", "fire" or "almost anything".
Slight or momentary departures from traffic safety rules "made in the field under [such] highly pressured conditions" (Saarinen, supra, at 502) and pure judgment calls attendant to driving under emergent circumstances are not the types of actions to which liability for recklessness can reasonably be attached (see, Mitchell v State of New York, 108 AD2d 1033, 1035 [brief failure of patrol car to operate sirens and lights during chase not reckless]; see also, Garrett v City of Schenectady, 268 N.Y. 219, 224, supra [no liability attached where fire truck driver turned his head first to the right and then to the left to scan traffic where a turn to the left first may have forewarned him of an accident]). In fact, the Legislature was aware that the driver of an emergency vehicle deliberately creates a risk to the public every time he or she exceeds the speed limit, passes a red traffic light or disobeys traffic flow rules pursuant to the statutory privileges. Thus, to rise to the level of recklessness within the context of the exercise of this emergency privilege, something greater than the deliberate risks normally associated with the suspension of the usual right-of-way rules must have been contemplated (e.g., Abood v Hospital Ambulance Serv., supra, at 299 [failing to give an audible warning while crossing an intersection against stop signal]). Otherwise, the privilege afforded by Vehicle and Traffic Law § 1104 (a) (2) would have no meaning.
A comparison of these facts with those in Abood v Hospital Ambulance Serv. (30 N.Y.2d 295, supra) is instructive. In that *516 case, an "unreasonable risk" was created  and the statutory privilege forfeited  because the ambulance driver failed to sound his siren while crossing through an intersection against a stop signal. No such similar risk was created or ignored by the pumper's driver in this case where the vehicle's siren was sounded and the flashing lights were activated.
The majority strains to uphold the jury's conclusion that defendant's driver was aware of a serious risk which he consciously disregarded (majority opn, at 511). To reach this result, the majority relies on the fact that the driver of the apparatus was unsure of the color of the traffic light governing his entry into the intersection, and on other judgment calls he made while driving  i.e., that he accelerated "once in" the intersection, failed to properly scan all lanes of traffic and never saw plaintiff (id., at 508).
The majority's focus on the wisdom of defendant's driver's split-second decision-making in driving is improper (see, Saarinen, supra, at 502; Garrett v City of Schenectady, supra) and obscures what really transpired here. The driver of the apparatus, responding to a potentially life-threatening fire alarm, approached an intersection at 10 to 15 miles per hour with his lights flashing and sirens blaring to warn other motorists to yield the right of way. By all accounts, he gave a blast of the air horn prior to entering the intersection.
The fire truck driver was entitled to rely on the fact that all other drivers are required by law to heed the warnings and clear the intersection. Based on the uncontroverted proof that plaintiff failed to yield the right of way to the pumper, and that plaintiff slammed into the rear wheel well of defendant's truck, the jury's conclusion that plaintiff was free of comparative fault is not supportable, and, indeed, is bewildering. By plaintiff's own admission, over a dozen other vehicles on the road had pulled to the side and stopped to permit the emergency vehicle to pass.
While the risk did exist that someone would not hear the sirens, that possibility was remote. The fact that road noise may have rendered defendant's sirens and air horn inaudible to a motorcyclist such as plaintiff (see, majority opn, at 508) did not require the fire truck driver to change or order his conduct in anticipation of that slight risk. We are instructed by "a long line of railroad and other cases depending on audible warning, that the rule has to be, not whether the signal was heard, but whether it was given" (County of Broome v Binghamton Taxicab Co., 276 App Div 438, 443). *517
Thus, the failure of the pumper truck's driver to accommodate the motorcyclist's unwitting and unfortunate approach did not render his conduct reckless. Had plaintiff's vehicle been large and yellow and equipped with flashing lights and sirens, defendant's driver's failure to notice him would have been more inexcusable.
Under the facts of this case, little significance should be placed on the defendant's driver's failure to know the color of the light when he entered the intersection. Even if he had known the light was red, he was "not bound by the usual command of the red light" (County of Broome v Binghamton Taxicab Co., 276 App Div 438, 439, supra), and was statutorily privileged to proceed so long as he fulfilled his obligations to slow down before crossing the intersection and to warn other drivers of his approach. Furthermore, the likelihood that the outcome would have been different if he had observed the color of the light is slight, since the undisputed testimony establishes that prior to entering the intersection the driver was travelling at approximately 10 to 15 miles per hour. Realistically, defendant could not have gone much slower without coming to a stop  a result that would effectively eviscerate the privilege to proceed past a red light after appropriate deceleration.
Similarly, the wisdom and adequacy of defendant's driver's other actions, such as how and when he chose to turn his head to view approaching traffic, the timing of his application of pressure to the gas pedal and his failure to know the color of the light  which he had a privilege to pass  were judgment calls which "must be weighed in the light of the [emergent] circumstances" as they unfolded, not in retrospect (Stanton v State of New York, 29 AD2d 612, 614, affd 26 N.Y.2d 990, 991). Although these actions may have constituted, at most, a momentary lapse in judgment, something more than that is required to demonstrate the type of culpable conduct that rises to the level of reckless disregard for the safety of others within the contemplation of Vehicle and Traffic Law § 1104 (e) (see, Saarinen v Kerr, 84 N.Y.2d 494, 502, supra; Mitchell v State of New York, 108 AD2d 1033, 1034, supra).
Indeed, the result reached by the majority in this case is virtually irreconcilable with this Court's holding in Saarinen, and the majority is guilty of applying "the governing standard of recklessness differently" (majority opn, at 512). In Saarinen, *518 we rejected the plaintiff's contention that a police officer acted recklessly within the meaning of Vehicle and Traffic Law § 1104 (e) in pursuing an offending driver at 60 m.p.h. on a wet roadway in a zone where the posted speed limit was half that rate. No material distinction can be discerned between the degree of culpability evidenced by the acts of the municipal agents in these two cases.
Here, the defendant's driver's undisputed use of the required visual and audible warning devices, coupled with his slow rate of speed and his failure to violate any other traffic rule or departmental policy were actions consistent with the statutory mandate that an emergency vehicle driver proceed in a nonreckless manner (cf., Abood v Hospital Ambulance Serv., 30 N.Y.2d 295, 299). Thus, the facts "show[] at most a pure accident" (Garrett, 268 NY, at 224, supra) and the complaint against defendant municipality should be dismissed.
Order affirmed, with costs.