OPINION OF THE COURT
Stephen G. Crane, J.
This case is not about the wisdom of a result that permits a perpetrator of a felony to receive compensation for a grievous injury that he sustained in fleeing from a vicious crime he had *701 just committed. This has already been decided by our highest Court (McCummings v New York City Tr. Auth., 81 NY2d 923). Neither is it a case of preventing the crime victim from recovering from the later convicted perpetrator for the victim’s losses and injuries.
Defendant, Bernard McCummings, moves for an order: pursuant to CPLR 3211 (a) (7), dismissing the complaint[1] on the ground that it fails to state a cause of action; pursuant to CPLR 3211 (a) (5), dismissing the complaint on the ground that it is barred by the Statute of Limitations; and pursuant to CPLR 6314, vacating the temporary restraining order previously granted by this court.
On June 28, 1984, at 8:00 p.m., plaintiff, Jerome Sandusky, then 72 years of age, was mugged in the New York City Transit Authority subway station at 96th Street and Eighth Avenue by McCummings and one Jacob Wise, who is not a party to this action. They had gone to the subway station for the express purpose of seeking out a victim or "vie” to rob. Another individual, Nathan Woods, also not a party to this action, acted as a lookout while McCummings and Wise pummelled, choked and punched Sandusky and went through his pockets looking for money. Just then, two plainclothes Transit Authority police officers, Christine Mead and Manuel Rodriguez, were patrolling the subway station because it had been the scene of several other muggings. They heard Sandusky screaming, and ran to the landing with guns drawn. There they observed McCummings and Wise beating and strangling plaintiff. Officer Rodriguez fired five shots from his revolver striking McCummings twice (in the back) and Wise once.
McCummings pleaded guilty to a felony — attempted robbery in the second degree — and was incarcerated. As a result of being shot, he was paralyzed for life. McCummings filed a notice of claim and sued the Transit Authority. A jury awarded a $4.3 million verdict in his favor, and judgment was entered on March 8, 1990. The Transit Authority appealed unsuccessfully to the Appellate Division, First Department, which affirmed the judgment (McCummings v New York City Tr. Auth., 177 AD2d 24), and to the New York State Court of Appeals, which also affirmed (81 NY2d 923, supra). The Su *702 preme Court of the United States denied certiorari in August 1993. Having exhausted all avenues of appeal, the Transit Authority then satisfied the judgment by paying money to McCummings. Sandusky commenced this action against McCummings on December 13, 1993 pursuant to the revised "Son of Sam” Law (Executive Law § 632-a).[2]
THE REVISED "SON OF SAM” LAW
Executive Law § 632-a (3) provides as follows: "Notwithstanding any inconsistent provision of the estates, powers and trusts law or the civil practice law and rules with respect to the timely bringing of an action, any crime victim shall have the right to bring a civil action in a court of competent jurisdiction to recover money damages from a person convicted of a crime of which he or she is a victim, or the legal representative of that convicted person, within three years of the discovery of any profits of the crime, as defined in paragraph (b) of subdivision one of this section. Any damages awarded in such action shall be recoverable only up to the value of the profits of the crime. If an action is filed pursuant to this subdivision after the expiration of all other statutes of limitation, any other crime victims must file any action for damages as a result of the crime within three years of the actual discovery of profits from the crime or of actual notice received from or notice published by the crime victims board of such discovery, whichever is later.”
WHAT CONSTITUTES "PROFITS OF THE CRIME”
Defendant argues that the $4.3 million verdict does not constitute proceeds or profits from the crime, but, rather, is compensation for a separate, independent tort committed by the Transit Authority Police of which he was the victim.
The term "profit”, in common parlance, and according to the dictionary definition, is generally understood to mean a gain or return or benefit; or the money made in a business *703 venture, sale or investment after all expenses have been met (The American Heritage Dictionary 548). However, here it is used as a term of art. Therefore, the statutory definition governs.
Executive Law § 632-a (1) (b) provides as follows: " 'Profits from the crime’ means (i) any property obtained through or income generated from the commission of a crime of which the defendant was convicted; (ii) any property obtained by or income generated from the sale, conversion or exchange of proceeds of a crime, including any gain realized by such sale, conversion or exchange; and (iii) any property which the defendant obtained or income generated as a result of having committed the crime, including any assets obtained through the use of unique knowledge obtained during the commission of, or in preparation for the commission of, the crime, as well as any property obtained by or income generated from the sale, conversion or exchange of such property and any gain realized by such sale, conversion or exchange.”
LEGISLATIVE HISTORY OF REVISED "SON OF SAM” LAW
Both sides argue that the legislative history of the revised "Son of Sam” Law supports their respective position as to the viability or lack thereof of plaintiff’s suit. In his Message of Approval, Governor Mario Cuomo stated that the purpose of the law was to serve the interests of "compensating the victim, and making sure the criminal does not profit from crime” and "bringing a measure of economic justice to victims of crimes.” (Bill Jacket, L 1992, ch 618, mem of approval, dated July 24, 1992, 1992 McKinney’s Session Laws of NY, at 2903.) The bill recognized that "preventing criminals from profiting from crime is a distinct and compelling State interest”. (Id.) He reiterated that the underlying premise of the Son of Sam bill was that "[i]t is grossly unjust for a criminal to profit from criminality and leave the victim uncompensated.” (Id., at 2903-2904.) The Division of the Budget recommended passage of the bill which "recaptures for crime victims much of what was intended under the 'Son of Sam Law’ and expands opportunities for victims to receive restitution and reparation.” (Bill Jacket, L 1992, ch 618, Budget Report on Bills, dated July 14, 1992.) Deputy Minority Leader Senator Emanuel R. Gold wrote that crime victims would be able to recover a judgment "only from any asset determined to be a 'profit of the crime.’ ” (Bill Jacket, L 1992, ch 618, letter *704 dated July 23, 1992.) Attorney-General Robert Abrams wrote that the new statute "requires that the income be generated 'as a result of having committed the crime’ and thereby avoidfs] reaching income generated by reasons separate and apart from the crime.” (Bill Jacket, L 1992, ch 618, mem to Governor, dated July 16, 1992.)
Defendant has seized upon this language in support of his argument that the proceeds of his personal • injury action against the Transit Authority do not constitute proceeds or profits of the crime which he concededly committed.
RULES OF STATUTORY CONSTRUCTION
The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature (McKinney’s Cons Laws of NY, Book 1, Statutes § 92). That construction is to be preferred which furthers the object, spirit and purpose of the statute (McKinney’s Cons Laws of NY, Book 1, Statutes § 96). "It is a basic tenet of statutory construction that the 'mischief to be corrected’ and the spirit and purpose of the statute must be considered” (Nestor v McDowell, 81 NY2d 410, 414). The legislative intent with which statutes are enacted is to be gleaned from the context, from the occasion and necessity of the law, from the mischief felt, and from the objects and remedy in view (McKinney’s Cons Laws of NY, Book 1, Statutes § 95). The court should construe the act in question so as to suppress the evil and advance the remedy (ibid). However, the court is obliged to construe statutory language literally where it expresses the evident intent of the Legislature, and the court cannot disregard the plain words of a statute even in favor of what may be termed an equitable construction, in order to extend it to some supposed policy not included in the act (McKinney’s Cons Laws of NY, Book 1, Statutes § 94).
APPLICATION TO THE CASE AT BAR
Here, it is clear that the legislative purpose in enacting the revised "Son of Sam” Law was to ensure that crime victims be compensated and that criminals not profit from the commission of the particular crime of which they are convicted. The revised law expanded the source of restitution and did not limit it solely to monies earned by convicted felons for selling book or movie rights. As previously noted, Executive Law § 632-a (1) (b) defines "[pjrofits from the crime” as "any property obtained through or income generated from the commis *705 sion of a crime of which the defendant was convicted”.[3] The Legislature could have enacted a forfeiture statute enabling an injured crime victim to proceed against any income realized by the convicted perpetrator from any source whatsoever, but it did not. It limited the source of recovery to income generated from the commission of the crime of which the defendant was convicted. Much as this court sympathizes with plaintiffs plight, the judicial function is to interpret, declare, and enforce the law, not to make it; it is not for the courts to correct supposed errors, omissions or defects in legislation (McKinney’s Cons Laws of NY, Book 1, Statutes § 73).
As the Court of Appeals for the Second Circuit held in Pan Am World Airways v Aetna Cas. & Sur. Co. (505 F2d 989, 1006), applying New York law, quoting from such luminaries as Justices Cardozo and Holmes, the causation inquiry stops at the efficient physical cause nearest to the loss. The courts look only to the proximate, efficient and dominant cause of the loss (see, e.g., Home Ins. Co. v American Ins. Co., 147 AD2d 353, 354-355).
In the case at bar, the proximate, efficient and dominant cause of defendant’s injury — the source of the $4.3 million verdict which plaintiff seeks to attach — was the common-law negligence of Officer Rodriguez, based upon his failure to exercise that degree of care which would reasonably be required of a police officer under similar circumstances, in employing deadly physical force in an effort to apprehend McCummings (McCummings v New York City Tr. Auth., supra, 81 NY2d, at 925).[4] This was an intervening event that broke any causal connection with the crime itself. (Contrast, People v Dekle, 83 AD2d 522 [the unbroken continuum took the participants far afield from the scene of the inception of the crime, yet without any break or intervention of another factor that would interrupt the concept of " 'immediately after the taking’ ” as defined in Penal Law § 160.00 (1)], affd 56 NY2d 835.) To hold defendant’s tort recovery subject to *706 attachment pursuant to Executive Law § 632-a would distort the intent of the revised "Son of Sam” Law and the definition of "[pjrofits of the crime” as "property obtained * * * as a result of having committed the crime”. Therefore, the personal injury verdict awarded to defendant does not constitute "profits from the crime” within the purview of Executive Law § 632-a (1) (b).
Accordingly, that branch of the motion seeking dismissal of the complaint for failure to state a cause of action is granted and the complaint is dismissed. That branch of the motion seeking dismissal based on the Statute of Limitations is, therefore, academic, and need not be reached.
The preliminary injunction previously granted on default is vacated.
Accordingly, it is ordered that the motion to dismiss the complaint is granted and the complaint is dismissed; and it is further ordered that the preliminary injunction shall be vacated 10 days after service of a copy of this order with notice of entry.

. The complaint sets forth a single cause of action based squarely on Executive Law § 632-a for which plaintiff seeks compensatory and punitive damages measured by defendant’s entire recovery from the New York City Transit Authority.

. The original "Son of Sam” Law provided, in effect, for the confiscation on behalf of crime victims of profits made by criminal perpetrators who sold their stories. This was struck down by the Supreme Court of the United States in Simon & Schuster v Members of N. Y. State Crime Victims Bd. (502 US 105) as an unconstitutional content-based restriction on free speech. This resulted because the law singled out income derived from expressive activity for a burden the State places on no other income, and it aimed only at works with a specified content. The Legislature amended the law in 1991 to overcome these infirmities (L 1991, ch 379).

. See the similar definition in CPLR 1310 (2) governing forfeiture: " '[Proceeds of a crime’ means any property obtained through the commission of a felony crime defined in subdivisions five and six hereof, and includes any appreciation in value of such property”. (See also, Morgenthau v Clifford, 157 Misc 2d 331.)

. Moreover, McCummings’ commission of the crime "merely furnished the condition or occasion upon which his injuries were received, but did not put in motion the agency by which the injuries were inflicted.” (See, e.g., Benaquista v Municipal Hous. Auth., 212 AD2d 860; cf., Palsgraf v Long Is. R. R. Co., 248 NY 339.)