■ In the Matter of CITY OF NEW YORK et al., Appellants, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. [643 NYS2d 573]

In July 1984 and again in August 1986, complainant George M. Franco submitted an application to become a New York City Police Officer. Although he passed all written and oral examinations, the New York City Police Department twice denied his application on psychological grounds. Complainant appealed the rejection of his candidacy to the New York City Civil Service Commission, which affirmed his rejection on both occasions.

On September 27, 1986, complainant underwent independent psychological evaluation by a psychometrician, who contradicted the Police Department's finding that complainant is psychologically unfit to perform the duties of a New York City Police Officer. On October 14, 1986, complainant was examined by a psychiatrist, who also found complainant to be a good candidate for police work. Finally, in July 1991, complainant was examined by a psychologist, who testified at the administrative hearing regarding complainant's fitness as a candidate for police officer and the accuracy of various psychological tests, administered both independently and by the Police Department.

Complainant filed the four underlying complaints with respondent alleging racial discrimination in response to the two Police Department rejections and the two Civil Service Commission affirmances of the Departmental determinations. The complaints charge that the Police Department improperly administered and evaluated the results of psychological examinations, basing its conclusion of unfitness for police work on racial stereotypes. Specifically, it is alleged that "the psychological evaluation test used by the [Department] is a means of limiting the employment of Hispanics like myself."

The hearing held by respondent New York State Division of Human Rights was conducted by four Administrative Law Judges over the period from December 19, 1988 to July 2, 1992 and consumed fourteen days in toto. The agency ultimately found, "While the record does not justify a conclusion that the Department's psychological testing procedures adversely impact upon Hispanics as a class, the record clearly demonstrates that Respondents' determination that Mr. Franco was psychologically unfit to be a police officer was substantially tainted by bias and prejudice against him because of his national origin." While an Administrative Law Judge recommended an award of $75,000 and restoration to the Police Department's civil service list, the Commissioner increased the award to $150,000 because of the duration of the harm and because, due to complainant's age and the expiration of the civil service list, he could no longer be restored to candidacy.

On this appeal, the Division of Human Rights advances the familiar argument that, in reviewing the determination of an administrative agency, this Court is limited to consideration of whether, upon a review of the record as a whole, the determination of the agency is supported by substantial evidence (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 181). In this context, insufficient evidence is equated with "no evidence" (*supra*, at 181), and substantial evidence is defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra*, at 180). A determination is founded upon substantial evidence where review of the record discloses that " 'there is a rational basis in it for the findings of fact supporting the agency's decision' " (*300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra*, at 182, quoting McCormick, Evidence § 352, at 847 [2d ed]).

The record in this matter demonstrates that there is a professional difference of opinion regarding complainant's psychological fitness to perform the duties of a police officer. Among those who conducted an evaluation for the New York City Police Department, a staff psychologist, in a report prepared in April 1986, found that complainant's "restlessness, evasive responses and overall defensive demeanor indicate difficulty adjusting to structure." He added that complainant "demonstrates an inflated sense of self-importance" and noted that his response to minimal stress was "very poor." Among those who performed a similar evaluation on complainant's behalf, a psychometrician, in a report dated September 27, 1986, stated his impression: "A young man who has no psychiatric, psychological, or any personality disorder and one who is mentally competent and qualified from a psychometric point of view to perform the duties of a police officer with the New York City Police Department." Complainant's own expert witness opined that he is "eminently qualified" to be a police officer. However, he conceded: "I know he's open and confrontational, but I don't think he's obtrusively so. I don't think he's hostile. I have not seen that. I don't think it's a negative." Complainant's expert further acknowledged that his assessment, based on tests performed in July 1991, is not indicative of complainant's psychological fitness at either time he was rejected as a candidate for police officer (1984 and 1986, respectively). The expert stated that test data are considered current for a period of only six months to, at most, one year.

That complainant's psychological test results may be subject

to varying interpretation by persons qualified by training and experience to evaluate them hardly requires a conclusion that complainant was a victim of unlawful discrimination. When asked, on cross examination, why the 1986 report of a Police Department staff psychologist reflected bias against complainant's national origin, his expert witness replied, "The whole thing looks like it's a stereo-typical response of what the [L]atino male is like to me." The expert did not say exactly what, in a comment such as, "Candidate * * * demonstrates an inflated sense of self-importance and his aspirations seem to be repeatedly unrealistic", is ethnically stereo-typical. On redirect examination, however, the expert opined that the report contains "a few catch alls and that just sets the stage to [r]eject. Manic features, severe problems with his thinking process, poor inter-personal skills with paranoid features." Asked why this assessment reflects bias toward Latinos, the expert stated: "These other features can be anybody, especially people who have been shortchanged in terms of their ability—their efforts to live in this society. It makes a lot of blacks think that and Latinos think that the world is against them, the city is against them, the bureaucracy is against them, and it's not uniquely black or Latin, but it's people who are oppressed. It does not necessarily mean an inability to cope. If they are not saying it somebody is stereotyping them and applying it to them, and that's what I think has happened here."

In this candid testimony, complainant's expert concludes not that the Police Department's evaluation failed to accurately reflect complainant's mental state but that the psychological irregularities noted by the Department's psychologist can be explained by complainant's experience in society. The professional opinion expressed by complainant's expert, therefore, is that the psychological tests administered by the Police Department to applicants for the position of New York City police officer produce results that are biased against Hispanics. Indeed, this is the substance of the complaint filed with respondent New York State Division of Human Rights.

Respondent agency, in its determination, explicitly found that "the record does not justify a conclusion that the Department's psychological testing procedures adversely impact upon Hispanics as a class". Not disposed to release a ruling that complainant simply failed to establish what he set out to prove, respondent agency issued an anomalous determination, concluding that while the tests are not biased against Hispanics generally, they are somehow biased against this candidate in particular, because he is Hispanic. The result is

both inherently contradictory and at odds with the expert testimony. It is therefore unsupported by substantial evidence of record and must be annulled.

We note that, in an era when a municipality is subject to virtually strict liability for acts of its police officers that result in injury (*see, McCummings v New York City Tr. Auth.*, 81 NY2d 923, 927-928, *cert denied* 510 US 991), it is incumbent upon a Police Department to conduct psychological testing of applicants. Given the importance of psychological testing to the New York City Police Department and the potential exposure of the City to liability, it would seem appropriate to accord the Department considerable latitude in its efforts to effectuate a psychological screening program. This sound policy is not advanced by the imposition of penalties by an administrative agency on behalf of unsuccessful candidates on less than substantial proof of unlawful conduct. Concur—Rosenberger, J. P., Rubin, Kupferman, Nardelli and Tom, JJ.