■ In the Matter of CATHOLIC CHILD CARE SOCIETY OF THE DIOCESE OF BROOKLYN, Respondent. DANNY R. et al., Appellants.—In a proceeding pursuant to Social Services Law § 384-b, the appeal is from a decree of the Surrogate's Court, Kings County (Bloom, S.), dated July 2, 1984, which (1) granted the guardianship and custody of the infant Wyvonna S. H. to petitioner Catholic Child Care Society of the Diocese of Brooklyn and the Commissioner of Social Services of the City of New York, and (2) authorized them to place her for legal adoption.

Decree affirmed, without costs or disbursements.

On this appeal, the natural mother contends that there was a failure to prove by clear and convincing evidence that she had abandoned the infant in question, and that the Surrogate erred in rejecting her claim that her failure to contact the child was justifiable under the circumstances and was not a manifestation of her intent to forgo parental responsibilities. In support of this claim, she maintains, *inter alia,* that she had been experiencing great hardship with regard to her other two children, which made her unable to visit with the infant, Wyvonna S. H.

In order to prevail in a proceeding such as this, the petitioner must prove abandonment by clear and convincing evidence (*see, Santosky v Kramer,* 455 US 745; *Matter of Michael B.,* 58 NY2d 71, *rearg denied* 58 NY2d 1114; *Matter of Rose Marie M.,* 94 AD2d 734). In this regard, petitioner presented undisputed evidence that the natural mother failed to visit with the child or communicate with the agency for a period in excess of six months prior to the filing of the petition. Pursuant to Social Services Law § 384-b (4) (b); (5) (a), such a failure is evidence of an intention to forgo parental rights and obligations. However, mere proof of such failure is insufficient to establish abandonment, as inquiry must also be made into whether or not there was good reason for the failure to visit or communicate (*Matter of Rose Marie M.,*

*supra; Matter of Wesley L.,* 72 AD2d 137). Thus, the statute refers to a parent's failure to visit or communicate with the child or agency "although able to do so", but provides, *inter alia,* that "[i]n the absence of evidence to the contrary, such ability to visit and communicate shall be presumed" (Social Services Law § 384-b [5] [a]). Accordingly, where, as here, the petitioner has conclusively established that there existed an absence of contact for an excess of six months, it became the natural mother's obligation to present evidence sufficient to establish that the absence of contact was a result of circumstances which made her unable to visit and communicate with the child or agency (*see, Matter of Ulysses T.,* 87 AD2d 998).

While it would be inappropriate to examine the question of whether good cause existed for the absence of such contact under rigidly formulated criteria which did not allow for any consideration of the particular circumstances of the parent, even under a case-by-case evaluation it must be shown, at a minimum, that the asserted hardship permeated the parent's life to such an extent that contact was not feasible. In this case, however, the natural mother failed to produce any evidence of a nexus, let alone a causal connection, between any difficulties which she might have experienced in caring for her older daughter, who was not residing with her during the period in question, and her failure to maintain contact with the subject infant or agency. Furthermore, there was no testimony about any problem with her son during the period of suspended contact preceding the filing of the petition. Accordingly, we agree with the Surrogate that the circumstances demonstrated herein were not of "such a continuously grave or absorbing character as would satisfactorily explain the mother's inability to set aside a single hour or two during an entire year to see her infant daughter, particularly in view of the fact that day-to-day care of her other two children was not in her hands, but had been delegated by her to others. Still less do they explain her prolonged neglect even to inquire about [the infant's] welfare with the caseworker by telephone".

As amended, the petition had also alleged the abandonment of the infant by her putative father. Under the circumstances of this case, however, the petitioner did not have to demonstrate that there existed a statutory ground (e.g., abandonment) for the termination of his parental rights in order to free the infant for adoption without his consent, as Social Services Law § 384-b (4) (b) applies only to those parents "whose consent to the adoption of the child would otherwise

be required in accordance with section one hundred eleven of the domestic relations law". Insofar as is here pertinent, that statute (Domestic Relations Law § 111 [1] [d], [e]) only requires the consent of those fathers of children born out of wedlock who have established a substantial relationship with the child (L 1980, ch 575, § 1; *see,* 1980 Report of NY Law Rev Commn, Memorandum Relating to the Rights of Fathers in the Adoption of Children Born out of Wedlock, 1980 McKinney's Session Laws of NY, at 1672). Recently, in *Lehr v Robertson* (463 US 248, 266-268), the United States Supreme Court upheld the constitutionality of the New York statutory scheme insofar as it withholds the power to veto an adoption from a putative father who had not come forward to participate in the rearing of the child (*see, Caban v Mohammed,* 441 US 380, 392; *see also, Matter of "Female" D.,* 83 AD2d 933, 934). The putative father herein does not dispute the Surrogate's finding that he did not fall within the purview of the governing "consent" provision (Domestic Relations Law § 111 [1] [e]), nor does he attempt to challenge the resulting conclusion that his consent to the adoption was unnecessary. Rather, he challenges the constitutionality of the statutory provision governing notice of adoption proceedings to fathers of children born out of wedlock (Domestic Relations Law § 111-a).

The stated purpose of this notice requirement is to enable the persons required to be served thereunder to present evidence relevant to the best interests of the child (Domestic Relations Law § 111-a [3]), and ofttimes a person whose consent to the adoption would not be required is entitled to receive such notice. In this case, the putative father was served with a supplemental citation, was assigned counsel, filed verified objections, and fully availed himself of the opportunity to testify at the evidentiary hearing. Therefore, any argument that Domestic Relations Law § 111-a violates his equal protection and due process rights by virtue of its failure to require that notice be given to fathers who are unaware of their child's existence is rendered academic by the fact that he received such notice and was fully able at the ensuing hearing to present evidence relevant to the best interests of the child. Mollen, P. J., Bracken, Niehoff and Rubin, JJ., concur.