In the Matter of the Commitment of TUWAHN CRAWFORD.

SAINT DOMINIC'S HOME, Appellant, v ARTHUR JONES, Also Known as ARTHUR E. JONES, Also Known as KEITH JONES, Respondent, et al., Respondent.

First Department, January 11, 1990

APPEARANCES OF COUNSEL

*Richard Jay Warren* of counsel *(Richard Colodny* with him on the brief; *Manning & Warren,* attorneys), for appellant.

*Rolanne Henry* for respondent.

*Marcia Egger* of counsel *(Lenore Gittis, Law Guardian),* for infant.

## OPINION OF THE COURT

RUBIN, J.

Tuwahn Crawford was born on February 14, 1978 and was 10 years old when this proceeding was commenced. He was placed with the Commissioner of Social Services on March 20, 1985 and with petitioner agency on January 29, 1986 for foster care. On April 19, 1988, the agency filed a petition seeking, *inter alia,* a determination pursuant to Social Services Law § 384-b (4) (b) and (d), respectively, that Tuwahn has been abandoned and permanently neglected by his father, respondent Arthur Edward Jones, Jr. (also known as Keith Jones). Under the relevant statutory provisions, an order committing the guardianship and custody of the child may be granted upon the grounds that "(b) The parent * * * abandoned such child for the period of six months immediately prior to the date on which the petition is filed in the court; or * * * (d) The child is a permanently neglected child" (Social Services Law § 384-b [4]). A child is considered abandoned if the parent "evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, such ability to visit and communicate shall be presumed" (Social Services Law § 384-b [5] [a]).

Upon the record submitted on the appeal, the only commu-

nication from respondent Arthur Jones regarding his son, Tuwahn, which can be documented is a letter to the agency dated April 18, 1988 which states, "I would appreciate very much for my mother, Mrs. Mary Jones, of 753 Fox Street, Apartment 6-C, Bronx, New York, to have legal custody of my son, until I am released from incarceration, which will be around January 2, 1989." Respondent was incarcerated on a conviction for robbery in the second degree at the time of his son's birth, and was incarcerated on a conviction for criminal possession of a weapon from October 1986 until after the subject proceeding was commenced. Respondent also spent time in State prison following a conviction for criminal sale of a controlled substance in February 1981 until paroled in October 1983 and from May 1985 to December 1985 after his parole was revoked. The record is devoid of any indication that respondent has ever had any contact with his son. The only other communication mentioned in the record is a second letter, alleged to have been sent by respondent to the agency on an unspecified date.

The Family Court dismissed the petition, finding that the letter of April 18, 1988, written one day prior to the date of the petition, was sufficient to dispel "any notion that there is silence and that there is silence calculated to evince a purpose to forego parental rights" on the part of respondent. The issue thus presented upon appeal is whether a single communication with an agency which may be construed as an expression of interest in preserving parental rights, drafted but not necessarily received prior to the date the petition was filed with the court, warrants its dismissal, despite a record which reflects neither support for, nor contact with, the child by the parent. We think not.

It is clear that Social Services Law § 384-b is an attempt to strike a balance between the interest in parental rights on the one hand and the best interests of the child on the other by avoiding unnecessarily protracted stays in foster care. "It is the intent of the legislature in enacting this section to provide procedures not only assuring that the rights of the natural parent are protected, but also, where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child by terminating parental rights and freeing the child for adoption" (Social Services Law § 384-b [1] [b]). Leaving aside the question of whether respondent's communication occurred within the prescribed six months preceding the filing of the petition, and the ques-

tion of whether respondent's letter expresses his own or merely his mother's interest in obtaining custody of the child, we do not feel that the Legislature intended that an isolated and belated suggestion of parental interest is sufficient to outweigh a child's right to a positive and nurturing family relationship, especially where, as here, the parent is essentially a stranger.

Abandonment is regarded as a matter of intent *(Matter of Ulysses T.,* 87 AD2d 998); however, by statute, the parent's subjective intent, whether or not expressed, does not preclude a determination of abandonment. As the Court of Appeals has pointed out, "The statute makes clear that the burden rests on the parent to maintain contact and that subjective good faith will not prevent a finding of abandonment (Social Services Law, § 384-b, subd 5, par [b])" *(Matter of Julius P.,* 63 NY2d 477, 481). We regard respondent's letter of April 18, 1988 as merely an expression of subjective intent, and an equivocal expression at that.

Moreover, it is a parent's obligation to *maintain* contact with the child or the agency. A single communication which merely serves to initiate contact is insufficient to meet the legal burden imposed on the parent to avoid termination of parental rights. It is clear from the record that respondent long since evinced an intent to forego his parental rights and obligations, having failed to establish even the most limited contact with the child. We note that, even accepting respondent's assertion that he was unable to ascertain his son's whereabouts until being informed by his own mother, Mary Jones, that the boy had been placed in foster care (which she testified to be June 1987), respondent made no effort to communicate with the child and did not contact the agency for almost a year. We therefore conclude that the record contains clear and convincing proof of Tuwahn's abandonment by respondent (Social Services Law § 384-b [3] [g]; *Santosky v Kramer,* 455 US 745).

Nor can it be said that respondent was prevented or discouraged from communicating with Tuwahn by the agency (Social Services Law § 384-b [5] [a]). While the agency is not required to demonstrate that it made diligent efforts to encourage communications with the child or the agency (Social Services Law § 384-b [5] [b]), it conducted a search to determine respondent's whereabouts in September 1986. Although its effort included an inquiry to the Department of Correction, the search was unavailing because respondent had used the alias

"Keith Jones" upon arrest for criminal possession of a weapon and was incarcerated under that name. The agency's effort to locate respondent militates against any conclusion that it may have hindered or discouraged communication with the child by his father.

■ Finally, we note that visits by Mary Jones, the child's paternal grandmother, are not attributable to respondent for the purpose of manifesting either parental interest in, or communication with, the child (Social Services Law § 384-b [5] [a]). The statute expressly requires communication by the parent to negate the inference of abandonment.

Having concluded that respondent abandoned the child, we do not reach the issue of permanent neglect (Social Services Law § 384-b [4] [d]).

Accordingly, the order of the Family Court, New York County (Bruce M. Kaplan, J.), entered March 3, 1989, which dismissed a petition brought pursuant to Social Services Law § 384-b as to respondent Arthur Jones, should be reversed, on the law, without costs, the petition granted, and the matter remanded to the clerk of the Family Court for reassignment for a dispositional hearing.

SULLIVAN, J. P., ELLERIN and SMITH, JJ., concur.

Order, Family Court, New York County, entered on or about March 3, 1989, unanimously reversed, on the law, without costs and without disbursements, the petition granted and the matter remanded to the clerk of the Family Court for reassignment for a dispositional hearing.