■ In the Matter of RICHARD X. and Another, Children Alleged to be Permanently Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MARION X., Appellant. (And Three Other Related Proceedings.) [640 NYS2d 628] —Cardona, P. J. Appeals from two orders of the Family Court of Schenectady County (Reilly, J.), entered March 1, 1994, which granted petitioner's applications, in four proceedings pursuant to Social Services Law § 384-b, to adjudicate certain of respondents' children to be permanently neglected and abandoned, and terminated respondents' parental rights.

Pursuant to an order of Family Court made on November 22, 1989, Richard X., born in 1988, was adjudicated neglected by his mother, respondent Marion X., and temporarily placed in petitioner's custody. The child's father remains unknown. The child was returned to his mother's home in July 1990. Thereafter, the mother gave birth to Joseph Y. later in 1990. The father of this child is respondent Joseph DD. By order dated December 11, 1991, both children were adjudicated neglected by the mother and were placed in petitioner's custody for a one-year period. In July 1992, petitioner filed permanent neglect petitions against respondents and in April 1993 filed two additional petitions against respondents seeking to have the children adjudicated abandoned. Family Court allowed all

four petitions to proceed simultaneously. Following a hearing, the court adjudicated the children abandoned and permanently neglected, and terminated respondents' parental rights. Respondents appeal.

Turning first to permanent neglect, such a finding must be based upon clear and convincing evidence (*see,* Social Services Law § 384-b [3] [g]; [7] [a]). The threshold inquiry is whether petitioner exercised diligent efforts to encourage and strengthen respondents' relationship with the children (*see, Matter of Star Leslie W.,* 63 NY2d 136, 142; *Matter of Chianti FF.,* 205 AD2d 849, 850). Such efforts include developing a plan for appropriate services, arranging for visitation and providing services (*see,* Social Services Law § 384-b [7] [f]). An agency, however, is not the guarantor of a parent's success (*see, Matter of Amanda R.,* 215 AD2d 220, *lv denied* 86 NY2d 705) and is required only to make "reasonable attempts" to foster the parent-child relationship (Social Services Law § 384-b [7] [f]).

A review of this record leads us to conclude that petitioner fulfilled its duty to encourage the parental relationship. With respect to the mother, a service plan was prepared and she was directed, *inter alia,* to participate in drug evaluations, visitation and parenting programs. Petitioner arranged visitation, provided the mother with money for transportation and sought out a parenting program. Petitioner's efforts were frustrated by the mother's failures to comply with the visitation schedule and successfully participate in drug rehabilitation. She missed 48 of the 62 scheduled visits, despite petitioner's efforts to remind her of visitation through letters and personal visits to her home.* The mother was warned that drug treatment was a prerequisite to regaining custody. She was discharged from one program due to lack of participation and, according to that program's director, admitted that she ceased treatment because she had gone back to using drugs. She failed to follow through with the recommendation that she obtain long-term treatment. Petitioner clearly satisfied its statutory duties in this case. In so doing, we note that where an agency has embarked on a diligent course but faces lack of cooperation or indifference, it is nevertheless deemed to have fulfilled its duty (*see, Matter of John ZZ.,* 192 AD2d 761, 762).

We also agree with Family Court's finding that the mother failed to adequately plan for the children's future (*see,* Social Services Law § 384-b [7] [a]). In making this determination, a

---

* Although the mother was incarcerated on two separate occasions during the relevant time period, the total time she was in jail was approximately two months and only accounts for eight of the missed scheduled visits.

court may consider the parent's failure to utilize the services made available to the parent (*see,* Social Services Law § 384-b [7] [c]) and whether the parent has taken steps to correct the problems which initially led to the removal (*see, Matter of Nathaniel T.,* 67 NY2d 838, 840). Here, the children were initially removed due to, *inter alia,* the mother's abuse of drugs. As noted, her participation in drug counseling was unsuccessful. This refusal or inability to deal with the problems which led to the children's removal indicates a failure to plan (*see, e.g., Matter of Victor James L.,* 208 AD2d 403; *Matter of Grace Q.,* 200 AD2d 894, 895-896; *Matter of Orange County Dept. of Social Servs. [Jeremy Myles P.] v Joann P.,* 195 AD2d 512, 512-513, *lv denied* 82 NY2d 658).

We also agree with Family Court's finding of permanent neglect as to the father. With respect to the diligent efforts requirement, petitioner offered substance abuse counseling, help in obtaining employment and visitation with his son, Joseph Y. Regular contact was attempted through meetings and letters. As with the mother, we find that petitioner's efforts satisfied its statutory obligations.

With respect to whether the father failed to plan for his child's future, the record reveals that despite the agency's efforts to arrange regular visitation, he also missed 48 of the scheduled 62 visits. According to one of petitioner's caseworkers, the father never took responsibility for missing the visits and showed up on only one occasion without the mother. There is no evidence in the record that the father maintained any other contact with the child. In our view, this alone would constitute permanent neglect (*see, Matter of Aisha Latisha J.,* 182 AD2d 498, *lv denied* 80 NY2d 759; *Matter of LeBron,* 140 AD2d 276, 277). The caseworker also testified that during the relevant time period, the father admitted that he was using drugs and that he wanted to get into a rehabilitation program but never followed through with the caseworker's recommendations. He also failed to stay employed or comply with a job training program. We therefore conclude that the father failed to formulate and act to accomplish a feasible or realistic plan for his child's future (*see, Matter of Orlando F.,* 40 NY2d 103, 110; *see also, Matter of Grace Q., supra,* at 895-896).

We turn next to the issue of whether Family Court properly adjudicated the children to be abandoned. A finding of abandonment is warranted where it is shown by clear and convincing evidence that the parents have failed to have contact with the children or the agency during the six-month period immediately prior to the date of filing the petition (*see,*

Social Services Law § 384-b [4] [b]; *Matter of Alexander V.*, 179 AD2d 913, 914; *Matter of Jasmine T.*, 162 AD2d 756, 756-757, *lv denied* 76 NY2d 714). A parent's ability to communicate is presumed unless there is evidence that the lack of contact was justified (*see*, Social Services Law § 384-b [5] [a]).

Here, the abandonment petitions were filed in April 1993. The record reveals that during the preceding six months respondents visited the children only once, in March 1993. In fact, there had been no other visitation since July 1992. According to petitioner's caseworker, the mother's first communication with petitioner was initiated by the caseworker when she accidentally met the mother on a street corner in January 1993. When the caseworker asked about visitation, the mother refused to schedule a date and indicated she would call. One month later, the mother set up a visit which she failed to keep. Her only actual visit was the March 1993 visit. As to the father, he requested a visit for a day in October 1992; however, he did not appear. Ultimately, he visited with his son on the one day in March 1993. Such sporadic and unsubstantial contacts were insufficient to defeat the charges of abandonment (*see*, *Matter of Cecelia A.*, 199 AD2d 582, 583-584; *Matter of Alexander V.*, *supra*, at 914). Nor can it be said that respondents were prevented or discouraged by petitioner from communicating with the children (*see*, *Matter of Crawford*, 153 AD2d 108, 111). Although a petition alleging abandonment does not require the agency to demonstrate diligent efforts to encourage communications with it or the children (*see*, *supra*, at 110), here the caseworker testified that between July 1992 and March 1993, she wrote letters and visited respondents' home an average of once a month to try to set up visitation but received no responses.

Furthermore, respondents failed to show that contact was not feasible (*see*, *Matter of Catholic Child Care Socy.*, 112 AD2d 1039, 1040). Neither parent offered any explanation for the lack of visitation. Clearly, respondents' failure to visit or communicate, while able to do so, evinced an intention to forego their parental rights and responsibilities (*see*, *Matter of Jeremy TT.*, 206 AD2d 632, 633, *lv dismissed* 84 NY2d 1025).

Finally, in reference to the dispositional phase of the proceedings, Family Court properly determined that it was in the children's best interests that respondents' parental rights be terminated (*see*, *Matter of Star Leslie W.*, 63 NY2d 136, 147-148, *supra*). In reaching this conclusion, we point to the fact that the children have spent almost their entire lives in petitioner's custody and respondents have failed to take any

"real, affirmative and meaningful steps manifesting a sense of responsibility toward the children * * * so as to avoid a termination of parental rights" (*Matter of Matthew C.*, 216 AD2d 637, 638; *see, Matter of John S.*, 199 AD2d 836, 837).

Mercure, Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the orders are affirmed, without costs.