Matter of Aaliah (2005 NY Slip Op 25468)

Matter of Aaliah

2005 NY Slip Op 25468 [10 Misc 3d 640]

October 20, 2005

Hoffman, J.

Family Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, January 25, 2006

[*1]
In the Matter of the Adoption of Aaliah.
Family Court, Bronx County, October 20, 2005

APPEARANCES OF COUNSEL

Lauri Braun for petitioner. Legal Aid Society (Jonathan Roman of counsel), Law Guardian.

OPINION OF THE COURT

Douglas E. Hoffman, J.
This adoption proceeding presents the issue of whether a putative father, who declined to take a paternity test during a prior paternity proceeding, but who filed with the Putative Father Registry after the termination of parental rights (TPR) proceeding concerning the subject child was withdrawn without prejudice, is entitled to notice of this adoption proceeding, filed thereafter. There has been no finding as to the putative father's status.
Petitioner and the Law Guardian contend that no notice to the putative father, Armstrong Wilkerson, is required. This legal position is stated in the adoption petition, but no hearing has yet been held concerning the adoption and neither petitioner nor the Law Guardian has filed a formal motion to dispense with any notice requirement to the putative father. The court asked petitioner and the Law Guardian to brief this notice issue. As the court cannot merely issue an advisory opinion, the court is treating both petitioner and the Law Guardian's application to dispense with notice to Wilkerson as an oral motion that the court will consider. For reasons set forth below, the court holds that Wilkerson is an individual entitled to notice of this adoption proceeding.
Petitioner E.[FN*]

filed the instant petition to adopt subject child Aaliah on March 12, 2004. Previously, petitioner had filed an adoption petition on March 2, 2001, prior to the mother having surrendered her parental rights and before there was any adjudication as to the parental status of Wilkerson. The foster care agency filed a TPR petition on October 1, 1999, initially naming only the biological mother of Aaliah as a respondent. On January 16, 2002, the agency also filed a petition to terminate the parental rights of Wilkerson, the putative father of the subject child. At [*2]his first appearance in the TPR proceeding against him, the court assigned an attorney to represent Wilkerson, who accepted service. During the TPR proceeding, Wilkerson, who has been incarcerated at all pertinent times, filed a paternity petition. The court assigned the same attorney to represent Wilkerson in the paternity petition. For purposes of judicial economy, the predecessor judge in this part and the undersigned addressed the TPR and paternity petitions jointly. For a variety of reasons, explained in relevant part below, the adjudication of the TPR spanned a period of years. The agency ultimately withdrew its TPR petition against the mother since, on April 8, 2002, she executed a judicial surrender of her parental rights. The surrender was conditioned upon the foster parent, petitioner in the instant adoption petition, adopting Aaliah.
The joint TPR and paternity proceedings were heard on at least 10 court dates. The duration of these proceedings resulted from three primary developments. First, Wilkerson's attorneys sequentially moved to be relieved as counsel for good cause. The court assigned an 18-B attorney for Wilkerson from the Bronx Family Court Assigned Counsel Panel. That attorney successfully moved to be relieved as counsel after Wilkerson reportedly filed a grievance against him with the Appellate Division, Departmental Disciplinary Committee. As a result of the filing of the grievance and, apparently, as a consequence of some notoriety these proceedings attained throughout the courthouse, no 18-B attorney from the Family Court Assigned Counsel Panel would agree to represent Wilkerson. After the court conducted an exhaustive search for assigned counsel for Wilkerson and with the assistance of the Appellate Division, a second attorney, a member of the Appellate Division, First Department, Appellate Panel, was assigned as counsel for Wilkerson. After a number of appearances, during most of which the court could not make appreciable progress on the case for reasons discussed below, this attorney, too, moved to be relieved as counsel. The thrust of the motion was that Wilkerson allegedly threatened to kill this attorney.
Second, Wilkerson could not be produced in the courtroom on numerous occasions. The captain's office of Bronx Family Court, mandated to ensure security in the courtroom, determined that Wilkerson was too belligerent and dangerous to appear in open court without extra security measures. On at least one occasion, it was reported by the captain's office that Wilkerson had actually engaged in a physical altercation with one of the court officers. To ensure courtroom security, the captain's office found it necessary to have Wilkerson appear in court only when shackled in this nonjury proceeding. With respect to the issue of courtroom security, the court deferred to the expertise of the captain's office. Wilkerson was produced by the Department of Correction on several occasions but refused to be brought to court in shackles. The court nonetheless found it inappropriate to proceed to the merits of the TPR or paternity petitions in his absence.
Third, Wilkerson was unable to serve the paternity petition upon the biological mother of the subject child. The foster care agency, the petitioner in the TPR proceeding, maintained an address in its records for the mother. Out of stated concern for the safety of the mother, the foster care agency refused to disclose the mother's whereabouts. Wilkerson's second assigned counsel therefore had to conduct a diligent search to locate the mother. Although this attorney ultimately obtained the location of the mother, he refused to disclose the mother's location to his client out of concern for the mother's safety. This occurred contemporaneously with the filing of this attorney's motion to be relieved as a result of purported threats of physical harm by his client. The court had also sought unsuccessfully to have the mother accept service or to consent to someone accepting service on her behalf.
The biological mother's address was never disclosed to the court, but late in the proceedings, the foster care agency submitted a handwritten and notarized letter from the mother claiming that Wilkerson was not the father of the subject child. The mother asserted that Wilkerson knew that he was not the [*3]father of the subject child and had assaulted her to initiate miscarriage of the pregnancy. The mother stated further that when this was not successful, Wilkerson threatened her and insisted that he be named on the child's birth certificate. Contrary to this statement, no father was in fact listed on the birth certificate that was submitted to the court.
Although Wilkerson was unable to effectuate service of the paternity petition, in the interest of justice, the court ordered DNA testing of the putative father and Aaliah to determine whether Wilkerson was indeed the biological father of the subject child, as the results could have had an impact upon the pending TPR proceeding. After several hearing dates during which Wilkerson was either not produced for court or refused to be brought to court in shackles when produced, the court sought information from the Department of Correction as to whether or not the paternity test had been conducted concerning Wilkerson. Both the Department of Correction and Wilkerson, in a letter to the court, indicated that Wilkerson refused to take the paternity test, despite an employee from the testing facility having traveled to the correctional facility where Wilkerson was detained, as ordered by the court. Explaining that he expected to be released from prison in the near future, Wilkerson stated that he planned to be tested by a private facility following his release. As it was Wilkerson's own actions that prevented the disposition of the paternity proceeding, the court was compelled to dismiss the paternity petition without prejudice on January 4, 2004. Following dismissal of the paternity petition, the agency withdrew the TPR petition against Wilkerson, fully intending promptly to assist the foster mother, the proposed adoptive parent, to file a new adoption petition. As the prior adoption petition, filed in 2001, had not been ripe for adjudication, it had been dismissed without prejudice and without objection in 2003.
It was not until March 12, 2004 that petitioner herein filed the instant adoption petition. Review of the documents submitted in support of the petition revealed that Wilkerson had acted quickly to file with the Putative Father Registry prior to the filing of the adoption petition, thereby arguably entitling him to notice of this proceeding and an opportunity to express his view as to whether or not the subject child should be adopted and, if so, by whom.
On May 4, 2004, the court appointed a Law Guardian for the subject child. When the case was next on the court's calendar, both petitioner, represented by counsel, and the Law Guardian contended that as Wilkerson had been afforded notice of the prior discontinued TPR proceeding, he had been afforded notice of the proposed adoption sufficient to satisfy the requirements of Domestic Relations Law § 111-a. The court asked the parties to brief the issue. In reaching its determination, the court has considered the letter of petitioner's counsel, as well as the affirmation of the Law Guardian, both of whom relied upon Social Services Law § 384-c (7) and Domestic Relations Law § 111-a.
Domestic Relations Law § 111-a (2) (h) entitles a person who has filed with the Putative Father Registry acknowledging paternity to receive notice of adoption proceedings. Domestic Relations Law § 111-a (1) limits this right providing that "notice shall not be required to be given to any person who previously has been given notice of any proceeding involving the child, pursuant to section three hundred eighty-four-c of the social services law." That section addresses notice in termination of parental rights proceedings and stipulates that no
"order of the court in any proceeding involving the child's custody, guardianship or adoption be vacated, annulled or reversed upon the application of any person who was properly served with notice in accordance with this section in any previous proceeding in which the court determined that the transfer or commitment of the child's care, custody or guardianship to an authorized agency was in the child's best interests." (Social Services Law § 384-c [7].)
The parties presently before the court argue that as Wilkerson was provided notice of [*4]the prior TPR proceeding, he is not entitled to further notice of this adoption. The court does not agree.
Domestic Relations Law § 111-a (2) (h) was enacted to seek to ensure that putative fathers who purportedly had grasped the opportunity to claim paternity and had acted upon an intent to engage in a true parent-child relationship were afforded a meaningful opportunity to be heard prior to a child being freed for adoption or actually being adopted. This notice section does not entitle the putative father to veto an adoption, but rather provides him with the opportunity to present evidence as to the child's best interests. (Matter of C., 6 Misc 3d 357, 359 [Fam Ct, Queens County 2004], citing Matter of Catholic Child Care Socy. of Diocese of Brooklyn, 112 AD2d 1039 [2d Dept 1985].) The issue presented to the court in the instant proceeding is whether or not Wilkerson's participation in the prior TPR proceeding satisfied this requirement; if so, no further notice need be given in this adoption proceeding.
At first glance, Domestic Relations Law § 111-a (1) seems to indicate that as Wilkerson was given notice of the TPR proceeding, heard together with Wilkerson's paternity petition, the notice section of this provision was satisfied and, therefore, no further notice to Wilkerson is required. However, reading this section in conjunction with Social Services Law § 384-c (7) indicates otherwise. Social Services Law § 384-c (7) provides that no further notice is required once "the court determined that the transfer or commitment of the child's care, custody or guardianship to an authorized agency was in the child's best interests." (Emphasis added.) Thus, an adjudication by the court as to the child's best interests or at least a determination that an individual is not a person entitled to notice of an adoption is a condition precedent to a determination in a subsequent adoption proceeding that no further notice is required to a person who filed with the Putative Father Registry.
Reading these statutes in pari materia, it is clear that the statute is intended to ensure that a putative father have an opportunity to be heard both at a meaningful time and in a meaningful manner. Thus, Domestic Relations Law § 111-a (2) (h) provides notice and an opportunity to be heard to putative fathers regarding adoptions. If that opportunity to be heard in a meaningful manner has already been provided, as in a TPR proceeding in which the court decided after hearing from the putative father that the best interests of the subject child dictated adoption, due process mandates would be satisfied and provision to a putative father of a second bite at a best interests analysis in the subsequent adoption proceeding would add nothing of substance to such a proceeding, would advance no stated legislative goal and would only serve to hinder the desired permanency for the subject child.
Once the underlying TPR petition has been adjudicated, with the putative father having the right not only to participate in a meaningful manner but, very importantly, having an opportunity to appeal from an adverse determination, all notice requirements to the putative father as to the child's best interests have been satisfied. As in the instant case, however, where there has been no final determination in the TPR proceeding as to the best interests of the subject child, the putative father's status has not been adjudicated and the putative father has had no right to appellate review, the mere filing of a TPR petition and the provision of notice of that proceeding to the putative father do not, without more, provide a forum for the putative father's interests to be adjudicated. Otherwise, a TPR petition could be filed, served and then withdrawn, as in the instant case, and the father's right to be heard as to his status with respect to the subject child or as to the child's best interests would be vitiated without any hearing or adjudication and opportunity for appellate review.
This was clearly not the intent of the petitioning agency at the time it withdrew the TPR petition following the conditional surrender by the mother and the dismissal of Wilkerson's paternity petition. The agency apparently anticipated that it could have the foster parent file the adoption petition without opposition and absent any expectation that Wilkerson would file with the Putative Father Registry.
That, for a time, Wilkerson could have participated in the TPR proceeding does not change the fact that there was never a determination by the court that Wilkerson was not the father of the subject child or that the best interests of the subject child were for the child to be freed for adoption. The [*5]withdrawal of the TPR petition precluded judicial determination of these issues. However unsympathetic the putative father herein may appear to some, there was no adjudication as to Wilkerson's status and no finding that it would be in the best interests of this child to be adopted. The court is constrained to follow the dictates of Domestic Relations Law § 111-a (2) (h), as Wilkerson filed with the Putative Father Registry. Petitioner is directed to provide notice to Wilkerson of this adoption petition and the court must provide him with an opportunity to be heard as to the best interests of the subject child. Given security constraints that may exist, and given that Wilkerson's only legally cognizable interest at this time is to provide the court with his input as to the best interests of the child, the court may permit Wilkerson to participate in the hearing by telephone. The notice requirements under the Domestic Relations Law and Social Services Law were enacted to provide putative fathers who have satisfied the requirements enumerated under these statutes an opportunity to be heard solely as to the child's best interests. These laws are not an avenue for putative fathers who have not cemented their parental rights to block an adoption. Only "consent" fathers, as described by Domestic Relations Law § 111, have a right to seek to veto an adoption. Thus, Wilkerson's participation at this time in the adoption proceeding is to submit evidence as to the subject child's best interests, nothing more.
Such evidence may be presented without Wilkerson's knowledge of the name and address of the foster mother, petitioner herein. The acknowledged criminal history of Wilkerson and his conduct throughout these proceedings warrant safeguards to protect petitioner. With petitioner's identity and location redacted, the petition would provide sufficient information including petitioner's age, occupation, marital history and manner in which the subject child came into the care of petitioner, to enable Wilkerson to make an informed determination as to whether or not to participate in this hearing and to submit evidence concerning the best interests of Aaliah. (Matter of "Male F.," 97 Misc 2d 505 [Sur Ct, Bronx County 1978]; see also Matter of Trina M., 121 Misc 2d 732, 733 [Sur Ct, Bronx County 1983].)
For these reasons, the court denies the motions by petitioner and the Law Guardian to dispense with notice to Wilkerson.

Footnotes

Footnote *: The court has redacted the name of petitioner except her first initial to protect petitioner for reasons set forth infra.