■ In the Matter of ANGELICAH U. and Others, Children Alleged to be Permanently Neglected. REGGIE U., Appellant; CHILDREN'S AID SOCIETY, Respondent, et al., Respondent. [64 NYS3d 15]—

Orders, Family Court, New York County (Emily M. Olshansky, J.), entered on or about October 21, 2016, which to the extent appealed from, following a hearing, made a finding of

abandonment as to Baby Girl A. (Baby Girl) and permanent neglect as to all three of the children, unanimously affirmed, without costs.

Family Court's determination that the father permanently neglected the subject children is supported by clear and convincing evidence (Social Services Law § 384-b [7] [a]). Petitioner agency engaged in diligent efforts to encourage and strengthen the father's relationship with the children by developing individualized plans tailored to fit his situation and needs that included parenting skills classes, domestic violence services, mental health services, attendance in case planning meetings, and family visitation so that he could be reunited with the children (*Matter of Adam Mike M. [Jeffrey M.]*, 104 AD3d 572, 573 [1st Dept 2013]). Despite these efforts, the father refused to speak to the agency, and when its representatives went to his apartment he would not answer the door. He would not return messages from the agency and did not respond to the agency's letters. Some of the letters set forth his service plan and others actually made referrals for services, but he never engaged in any services and did not follow up on a single referral. The agency set up regular visitation with the children that the father did not take advantage of. An agency that has embarked on a diligent course but faces an uncooperative parent is deemed to have fulfilled its duty (*Matter of Sheila G.*, 61 NY2d 368, 384 [1984]).

We also reject the father's contention that his mental illness precluded a finding of permanent neglect because it prevented him from planning for the children's future. The agency made multiple referrals and appointments for the father to receive mental health services, but he did not take advantage of any of them. The father failed to plan by failing to utilize the medical, psychiatric, psychological and other social and rehabilitative services and the material resources that were made available to him, and cannot blame the agency for his failure to do so (Social Services Law § 384-b [7] [c]; *see Matter of Vincent Anthony C.*, 235 AD2d 283, 283 [1st Dept 1997]).

There was also clear and convincing evidence of the father's abandonment of Baby Girl, whom he did not even name (Social Services Law § 384-b [5] [a]; *Matter of Annette B.*, 4 NY3d 509 [2005]; *Matter of Tamar T.W. [Temorerie T.W.]*, 149 AD3d 852 [2d Dept 2017]). During the abandonment period from March 14, 2015 through September 14, 2015, the unrefuted testimony and progress notes establish that the father did not visit Baby Girl at all and did not communicate with her in any way. The single contact the father had with the agency at a service and

permanency plan conference for Baby Girl was not sufficient to overcome his abandonment of her (*Matter of Crawford*, 153 AD2d 108, 111 [1st Dept 1990]; *Matter of Stephen Sidney W.*, 283 AD2d 153, 154 [1st Dept 2001]).

We have considered the father's remaining contentions and find them unavailing. Concur—Richter, J.P., Mazzarelli, Kahn and Moulton, JJ.